Richard WHITTAKER, Appellant,
(Defendant Below)

v.

Susan DAIL, Appellee.
(Plaintiff Below)

No. 27S02–9201–CV–22.

Supreme Court of Indiana.

Jan. 13, 1992.

Linda Y. Hammel and Charles F. Robinson, Jr., Yarling Robinson Hammel & Lamb, Indianapolis, for appellant Richard Whittaker.

P. Robert Dawalt, Jr., Marion, for appellee Susan Dail.

ON CIVIL PETITION TO TRANSFER

KRAHULIK, Justice.

Richard Whittaker, Defendant–Appellant, has petitioned this Court to accept transfer from the Court of Appeals' affirmance of a default judgment entered against him in the amount of $99,423.90 compensatory damages and $198,757.80 punitive damages. 567 N.E.2d 816 (1991). We accept transfer, reverse the judgment, and remand for a new trial.

The record reveals that Whittaker was sued for battery on September 3, 1987, by Susan Dail. The allegations of the complaint were that Whittaker abducted plaintiff from the streets of Marion, Indiana, on June 21, 1987, while she was jogging and took her to his house where he forced her to remove her clothing and struck her repeatedly with a wet towel. The complaint further alleged physical and emotional injuries and requested actual and punitive damages in an unspecified sum.

Melvin Corn appeared as attorney for Whittaker. Following this appearance, Dail moved for summary judgment with an affidavit paralleling the allegations of her complaint. On November 11, 1987, attorney Thomas A. Grogg entered his appearance for Whittaker and filed an answer denying Dail's allegations. Additionally, in January of 1988, Whittaker filed his affidavit in opposition to Dail's motion for summary judgment. In the affidavit, Whittaker affirmed that he had not removed Dail from the streets of Marion, but that she had come to his house voluntarily and of her own free will in order to have sexual relations with him. Additionally, Whittaker affirmed that any striking of Dail was in the heat of passion after sufficient provocation by Dail and in Whittaker's self defense. Summary judgment was denied and a first pre-trial conference was set for March 2, 1988.

At the pre-trial conference, a schedule for filing pre-trial motions, witness and exhibit lists, and completion of discovery was established and the case was set for trial by jury for November 21, 1988. Discovery proceeded with interrogatories and deposi-

tions. Additionally, Whittaker moved for summary judgment on the issue of punitive damages because he had previously pled guilty to a charge of battery that arose out of this incident. The trial court denied his motion for summary judgment. Witness and exhibit lists were exchanged in a timely fashion, and the case proceeded toward trial. For various reasons, the court, on its own motion, removed the case from the trial calendar and reset the case for trial by jury for October 23, 1989.

On March 9, 1989, attorney Thomas Grogg filed his motion to withdraw appearance stating that Whittaker had failed to cooperate with him in preparation of the suit and had failed to pay attorneys fees due to Grogg. The motion was granted. Following attorney Grogg's withdrawal, Dail promptly filed her second motion for summary judgment citing, in support of such motion, the pleadings of record and the depositions of the parties. The court set the matter for hearing on June 21, 1989. Attorneys Charles A. Graham and Catherine Gibbs entered their appearances for Whittaker on April 18th and, on June 16, 1989, filed a response to this second motion for summary judgment, supported by a second affidavit paralleling the allegations that Whittaker had made in response to the original motion for summary judgment. Again, the court denied the renewed motion for summary judgment and set the case for trial by jury for October 23, 1989. One week before the trial date Dail, by counsel, requested a continuance. The court granted the motion and reset the case for trial on November 13th. A second continuance was granted upon a motion by Whittaker, and a third was granted upon the agreed request of both parties. Trial was finally set for March 5th. On January 31st attorneys Graham and Gibbs filed their motion for leave to withdraw as attorney because Whittaker had not paid attorneys fees as agreed. This motion was granted.

Subsequent to Whittaker's attorneys' withdrawal, plaintiff requested a final pre-trial conference which the court set for February 28th, one week before the trial was to commence. It is unclear from the record whether Whittaker was notified of the pre-trial conference, but, in any event, he failed to appear. At this pre-trial conference on February 28, 1990, Dail filed a "waiver of jury trial" which stated that a final pre-trial was scheduled for February 28th and that "among the issues to be presented at the pre-trial was the motion of plaintiff to waive trial by jury." Relying on Indiana Trial Rule 32, plaintiff stated that the pre-trial had been scheduled for February 28th and that Whittaker had failed to appear and requested the court to allow testimony at the trial of plaintiff's physicians, by deposition, "over any objection of defendant due to his failure to appear and participate in the pre-trial." The record fails to reveal whether either of these motions was granted, but does reveal that the court personally advised Whittaker by telephone that the cause was set for trial on Monday, March 5.

On the day of trial, Dail and her attorney appeared in person; Whittaker did not. The record reveals that the judge noted the absence of Whittaker and the fact that he had been personally notified of the trial setting. The following dialogue then occurred between the judge and Dail's attorney:

COURT: Mr. Dawalt, I assume you have the Motion for Default to offer, is that correct?

DAWALT: Well, yes, your Honor, I do want to proceed with some evidence though in order to show that we were in Court and proceeded with the trial, if that's all right.

COURT: O.K. What I—what I will do at this time is enter a default against the defendant, Richard Whitaker [sic] and we will proceed to trial on the issue of damages.

(Record, 206–207) Dail presented the depositions of Larry Musselman, M.D., a psychiatrist, and Gerald Goldstone, Ph.D., a psychologist. Musselman testified that Dail visited with him on one occasion and that he reached the conclusion that she was suffering some high level anxiety related to post-traumatic stress disorder. He did not prescribe medication, but referred her

to Dr. Goldstone. Dr. Goldstone testified that he saw Dail on four separate occasions, during which time he concurred in the diagnosis of post-traumatic stress disorder for which he prescribed relaxation tapes and techniques. After only four visits, Dail did not return to Dr. Goldstone.

Dail testified that she was acquainted with Whittaker. She stated that Whittaker asked her on several occasions to go out with him, but that she had refused these advances. She further testified that, on the date in question, she was jogging when Whittaker stopped and forced her into his car, drove her to his house where he called her names, threatened to kill her, and struck her with a wet towel on her arm, leg and left side of the body. Additionally, she testified that she had developed a fear of leaving her home, that she received psychological counselling, and that she changed residences out of fear. She introduced into evidence photographs showing some bruising on the left thigh and hip bone, as well as upper left arm. In addition, plaintiff introduced and the court accepted plaintiff's exhibit 7 which showed medical bills of $699.90, lost wages of $624, as well as emotional distress of "$100 times number of days from the date of incident to the present—June 27, 1987, to March 5, 1990," equalling $98,100, and punitive damages in the amount of $198,757.80. Finally, plaintiff introduced the direct testimony of Judy Flannery, a psychologist, who testified that she met with plaintiff on four occasions and referred her to Dr. Musselman. Judy Flannery likened the plaintiff's mental distress as "almost similar to a rape case." Based on this evidence, the trial court entered judgment that same day for compensatory damages in the amount of $99,-423.90 and punitive damages in the total amount of $198,757.80, for a total of $298,-181.70.

Four days later, on March 9th, attorneys Robinson and Spitzer entered their appearance for Whittaker and moved to set aside the default judgment. The court set the matter for hearing for April 10th, at which time Whittaker presented evidence that prior to the incident he and Dail were well-acquainted, having lived together for several months on two separate occasions. Additionally, in support of this testimony, Whittaker introduced into evidence various letters and holiday cards sent to him by Dail, as well as a photograph of Dail taken by him during a trip to Chicago, Illinois.

According to Whittaker, on the date in question he saw Dail with a girlfriend and asked Dail to repay some money that he had loaned to her. During this conversation, she asked if she could spend the night with him and, after his affirmative reply, she drove her car to his house. The two of them were in bed undressed when an argument about the previously-mentioned debt ensued. Whittaker testified that he got out of the bed to go to the bathroom, at which time Dail began cussing and screaming and ran at him kicking him in the legs. In response to this, he picked up a towel and, in an attempt to defend himself, swung it at her. He testified that she then dressed and left the house. She pressed charges against him, in response to which, on the advice of his attorney, he pled guilty and received a $1 fine and one year's probation.

In explanation of his failure to appear at trial, Whittaker testified that he hired attorneys and incurred expenses of approximately $4,000 in defense of this action. He also testified that after receiving notification from the court at the pre-trial conference of the pendency of the trial setting, he called Allstate Insurance and had the understanding that Allstate would employ an attorney for him. He futher testified that at no time did he intentionally disregard the court's notice, and requested his day in court in order to present his version of the case to a jury.

Additionally, at the hearing, the Allstate claims adjuster testified that she did, in fact, talk to Whittaker and was aware that a trial date was rapidly approaching. After receipt of Whittaker's legal file from Whittaker, she attempted to employ the firm of Yarling Robinson Hammel & Lamb. After meeting with such attorneys, she believed that she had employed them to represent Whittaker. Lastly, an attorney from that firm testified that he, in fact, did

meet with the claims adjuster from Allstate, but that it was his misunderstanding that he was to be employed to file a declaratory judgment action against Whittaker and not to defend Whittaker. The court took the matter under advisement and, two days later, denied the motion to set aside the default judgment.

The Court of Appeals affirmed the trial court's denial of Whittaker's motion for relief from judgment on the grounds that the trial court had not abused its discretion in denying said motion. On this issue, the court said:

> We cannot say that the trial court's conclusion that excusable neglect had not been shown is an abuse of his discretion—an erroneous conclusion clearly against the logic and effect of the facts or the reasonable, probable deductions to be drawn therefrom.

567 N.E.2d at 824.

It is on this issue that we disagree with the Court of Appeals' opinion. The trial court did abuse its discretion by not allowing Whittaker his day in court to contest Dail's claims. The evidence presented by Whittaker at the hearing held on his motion to set aside the default judgment was clear and unequivocal. The obvious import of the evidence is that a "breakdown in communication" occurred giving rise to Whittaker's legitimately-held belief that his insurance carrier would hire a lawyer to represent him. We agree with Judge Rucker's dissent which analogizes this case to the facts in *Boles v. Weidner* (1983), Ind., 449 N.E.2d 288. We recognize that the precise holding of *Boles* is that a breakdown in communication between an insurance agent and an insurance carrier, resulting in a failure to employ counsel, is a sufficient basis to support a finding by the trial court that the default judgment should be set aside. Additionally, we further recognize that *Boles* does not stand for the proposition that *every* breakdown in communication *requires* that a judgment be set aside. Nevertheless, we hold that where the unchallenged credible testimony establishes a breakdown in communication which results in a party's failure to appear

for trial, the grounds for setting aside a default judgment, as specified in Indiana Trial Rule 60, have been satisfied and the trial court should set aside such default judgment. The record here unequivocally reveals that, while this case had been pending for approximately three years, there was no evidence of any "foot dragging" on the part of Whittaker, other than his inability to continue to pay his attorneys to defend him. In view of the record, we hold that the trial court's denial of Whittaker's request to set aside the default judgment and to have a jury determine the facts of this case was an abuse of discretion.

We, therefore, grant transfer, reverse the entry of default judgment and remand the case to proceed to trial by jury.

DeBRULER, GIVAN and DICKSON, JJ., concur.

SHEPARD, C.J., dissents, believing that the Court of Appeals was correct in holding that the trial court did not abuse its discretion.