

FILED

Feb 28 2018, 8:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas A. Vick
Law Office of Thomas A. Vick
Greenwood, Indiana

ATTORNEYS FOR APPELLEES
TREE CITY VILLAGE AND NEW
GENERATION MANAGEMENT

Lonnie D. Johnson
Belinda R. Johnson-Hurtado
Cheyenne N. Riker
Clendening Johnson & Bohrer,
P.C.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Genia Wamsley,

*Appellant-Plaintiff,*

v.

Tree City Village, New
Generation Management, Inc.,
and Matthew Joseph,[1]

*Appellees-Defendants.*

Februray 28, 2018

Court of Appeals Case No.
16A01-1706-CT-1355

Appeal from the Decatur Superior
Court

The Honorable Matthew D.
Bailey, Judge

Trial Court Cause No.
16D01-1609-CT-410

**Mathias, Judge.**

---

[1] Appellee-Defendant Matthew Joseph does not participate on appeal. However, pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal.

[1] Genia Wamsley ("Wamsley") appeals the trial court's order setting aside default judgment entered against Tree City Village and New Generation Management, Inc. (collectively "the Landlords"). Because we find that the trial court abused its discretion when it found that the failure to respond to the lawsuit by the Landlords was the result of excusable neglect, we reverse and remand.

## Facts and Procedural History

[2] On March 7, 2016, Matthew Joseph ("Joseph") was cleaning his nine-millimeter handgun in his Greensburg, Indiana apartment[2] when it accidently discharged. The bullet went through his wall and into the adjacent apartment where it struck Wamsley in the side. Wamsley survived, but she suffered significant injuries and medical expenses.

[3] On April 25, 2016, Wamsley's counsel, Thomas Vick ("Vick") sent a letter to New Generation Management, Inc. notifying it of his representation of Wamsley and that he was "preparing to litigate any and all claims available to her." Appellant's App. p. 33. He also asked that New Generation Management, Inc. place its insurer on notice of his representation.

---

[2] Tree City Village is the name of the apartment complex and New Generation Management, Inc. manages the property.

[4]     A couple weeks later, Vick received a letter from The Cincinnati Insurance Companies' (the "Insurer")[3] Senior Claims Specialist Lori Dixon ("Dixon") acknowledging Vick's representation of Wamsley and requesting certain information and documents pertaining to the incident. Between May 17 and July 28, Dixon and Vick communicated frequently over e-mail regarding Wamsley's claim, but Dixon denied Wamsley's claim. Importantly, Dixon did not request that Vick copy her with any complaint filed regarding the claim.

[5]     On September 13, 2016, Wamsley filed a complaint for damages against Joseph and the Landlords. The complaint alleged negligence and nuisance against the defendants and that the Landlords had breached a duty of care by not acting reasonably to protect Wamsley's safety. The Landlords received service of the complaint the week it was filed. On September 15, Dixon emailed Vick notifying him that the Insurer denied Wamsley's claim. And on September 19, New Generation Management, Inc. president Tamera L. Brandt ("Brandt") sent Vick a letter in which she confirmed that she had received the summons and complaint, and that the complaint mistakenly stated that New Generation Management, Inc. owned Tree City Village. Vick did not respond to Brandt's letter, and Brandt placed the summons and complaint in a file cabinet for storage. Appellant's App. p. 50.

---

[3] The Cincinnati Insurance Companies is the insurance agency for both Tree City Village and New Generation Management, Inc. Appellees' App. p. 7.

[6] Because the Landlords did not respond to the complaint, Wamsley filed for default judgment on October 25. On November 10, the trial court entered default judgment against the Landlords and scheduled a damages hearing. Prior to the hearing, on February 15, 2017, Landlords filed motions to set aside the default judgment alleging that the failure to respond was due to excusable neglect and that they had a meritorious defense to the allegations.

[7] On March 31, the trial court held a hearing on the motions to set aside default judgment. At the hearing, counsel for the Landlords argued that the Insurer was not aware of the complaint because Vick never provided the Insurer with a copy. Counsel further contended that the failure to respond constituted excusable neglect because Brandt did all she thought was required of her when she received the complaint. Vick responded,

> Now, the idea of somebody looking at a complaint, seeing the summons, seeing that their company, of which they are president, is named in the complaint, responding to the complaint by a letter to opposing counsel and then not doing anything to follow up on that, I don't think that that's excusable neglect. I see that as willful ignorance.

Tr. p. 23.

[8] On April 10, the trial court granted the Landlords' motions in two one-sentence orders. Wamsley filed a motion to correct error on May 5, and the trial court denied it on May 31. Wamsley now appeals.

## Discussion and Decision

[9] Wamsley argues that the trial court abused its discretion when it granted Landlords' motions to set aside default judgment. Because Indiana law strongly prefers disposition of cases on the merits, default judgments are generally disfavored, and the trial court's discretion in granting a default judgment should be exercised in light of this disfavor. *Coslett v. Weddle Bros. Const. Co.,* 798 N.E.2d 859, 861 (Ind. 2003). On appeal, we review the trial court's decision for an abuse of discretion. *Allstate Ins. Co. v. Watson*, 747 N.E.2d 545, 547 (Ind. 2001). An abuse of discretion occurs when the trial court's denial is clearly against the logic and effect of the facts and inferences supporting the order. W*hitt v. Farmer's Mutual Relief Ass'n*, 815 N.E.2d 537, 539 (Ind. Ct. App. 2004).

[10] Indiana Trial Rule 55(C) explains that "[a] judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of Rule 60(B)." Indiana Trial Rule 60(B) provides in relevant part, "On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for . . . (1) mistake, surprise, or excusable neglect[.]"[4]

---

[4] We acknowledge that when a party moves to set aside default judgment under Trial Rule 60(B)(1), it must also allege a meritorious claim or defense. T.R. 60(B). However, because we find that the trial court abused its discretion when it implicitly found excusable neglect, we decline to address the parties meritorious claim arguments. Landlords did not contend that the default judgment should be set aside for any other grounds under Trial Rule 60(B).

Providing the trial court with the deference it is due, "[a] Trial Rule 60(B)(1) motion does not attack the substantive, legal merits of a judgment, but rather addresses the procedural, equitable grounds justifying the relief from the finality of a judgment." *Kmart Corp. v. Englebright*, 719 N.E.2d 1249, 1254 (Ind. Ct. App. 1999) (citation omitted), *trans denied.* Because "[t]here is no general rule as to what constitutes excusable neglect under Trial Rule 60(B)(1)," "[e]ach case must be determined on its particular facts." *Id.* (citation omitted). The burden is on the Landlords "to affirmatively demonstrate that relief is necessary and just." *Id.* (citation omitted).

Landlords claim that the evidence presented to the trial court was sufficient to demonstrate excusable neglect[5] because: (1) "Wamsley failed to notify the insurer of the existence of the Complaint[;]" and (2) Landlords believed they "had done all that was required of them by allowing the insurer [to] handle the claim." Appellees' Surreply Br. at 13. We address each contention in turn.

## A. Wamsley's Failure to Notify Landlords' Insurer

Landlords cite to two cases from our supreme court and one case from our court in support of its argument that Vick's failure to forward the complaint to the Insurer heavily factors into the Landlords' alleged excusable neglect in

---

[5] Although the trial court did not make a specific finding of excusable neglect, this was the only basis argued by Landlords in support of their Trial Rule 60(B) motions. Therefore, we presume that because the trial court granted the motion, it necessarily concluded that Landlords' failure to respond to the Wamsley's complaint was the result of excusable neglect.

failing to appear. In *Boles v. Weidner*, 449 N.E.2d 288 (Ind. 1983), Boles was involved in an automobile accident with Weidner. *Id.* at 289. Prior to Boles filing suit, Weidner and his insurer were notified that Boles was represented by counsel, and correspondence between Boles's counsel and the insurer took place. Boles filed suit against both Weidner and his employer, and when neither party responded, Boles filed for default judgment which the trial court granted. Months later, Weidner and his employer entered an appearance and filed for relief from judgment. Weidner claimed that he had provided his insurance agent with the complaint and that the agent was supposed to notify the insurance carrier. The trial court granted Weidner's motion, and Boles appealed.

[14] When it granted the motion to set aside default judgment, "the trial court found that the failure of the plaintiff's counsel . . . to exercise the common courtesy of notification to the insurance carrier of the lawsuit's existence constituted conduct prejudicial to the entry of a default judgment and was a factor which contributed to the entry of default." *Id.* at 290. However, our supreme court recognized that Boles's counsel was under *no* obligation to notify the insurer of a lawsuit and explained that "counsel's failure to notify the carrier of the entry of a lawsuit would not, standing alone, justify the trial court in setting aside the default judgment." *Id.* Thus, although it was a valid factor in a trial court's decision to set aside default judgment, the question before the court was "whether the defendants' negligence in appearing in the lawsuit was excusable under all the facts and circumstances." *Id.*

Our supreme court affirmed the judgment of the trial court for several reasons including: (1) Weidner immediately gave the complaint to his insurance agent to forward it to the insurance agency handling the claim; (2) there was a breakdown in communication between the insurance agency and the insurance carrier; and (3) a claims representative for the insurance carrier attempted, without success, on at least ten occasions to obtain Boles's medical records from his attorney. *Id.* at 290–91.

In *McGee v. Reynolds*, 618 N.E.2d 40 (Ind. Ct. App. 1993), McGee was involved in an automobile accident with Reynolds. McGee's attorney had several conversations with Reynolds's insurer regarding a settlement; however, the negotiations reached an impasse. McGee's attorney failed to properly serve Reynolds due to an incorrect address, and never responded to Reynolds's insurer's letter inquiring as to the status of the claim. McGee filed, and the trial court granted, a motion for default judgment. Seven months later, Reynolds received notice and moved to set the default judgment aside, which the trial court granted. McGee appealed.

A panel of this court affirmed the trial court's decision to set aside the default judgment and explained that the "failure to answer a direct inquiry from an insurer concerning his client's claim when coupled with the failure to provide the insurer with notice of a pending law suit smack of chicanery and unfair advantage." *Id.* at 41. However, the court clarified that the failure of McGee's attorney to give notice of the lawsuit to Reynolds's insurer alone would have been insufficient to set aside default judgment. *Id.*

And in *Smith v. Johnston*, 711 N.E.2d 1259 (Ind. 1999), Johnston filed a complaint with the Indiana Department of Insurance against Dr. Smith and Smith Surgical group for medical malpractice. *Id.* at 1261. After the medical review panel found that Smith had failed to comply with appropriate standards of care, Johnston filed suit against Dr. Smith and Smith Surgical Group. A scrub nurse signed for the summonses and placed the documents on Dr. Smith's desk.[6] No response was filed, so Johnston filed for default judgment which the trial court granted. Smith then moved to set aside default judgment, in part, for excusable neglect based on a breakdown in communication. The trial court denied Smith's motion, and he appealed.

On appeal, our supreme court affirmed the trial court stating, "This is neglect, but not excusable neglect as the term appears in Rule 60(B)(1)." *Id.* at 1262. The *Smith* court then distinguished the case from other previous decisions where excusable neglect was found and explained, "Here, Smith knew his mail was unattended and accepted the risk of adverse consequences. The judicial system cannot allow its processes to be stymied by simple inattention." *Id.*

The case before us is more analogous to *Smith*, and distinguishable from both *Boles* and *McGee*. Unlike in *Boles*, here, the Landlords never sent the complaint to their Insurer. And unlike the attorney in *McGee*, Vick properly served the

---

[6] The office manager, who usually handled all legal matters, was in the process of leaving Smith Surgical Group due to financial difficulties and was not in the office at the time the lawsuit was filed. Dr. Smith apparently did not see the summonses until after default judgment was entered.

Landlords, and he never actively ignored inquires made by the Landlord or the Insurer. Rather, similar to the situation in *Smith*, the Landlords failed to take any action with regard to the complaint, except for notifying Vick of an immaterial defect. However, unlike the circumstances in *Smith*, here the Landlords personally received the complaint and summons, acknowledged receiving it, and then New Generation Management, Inc.'s president placed it in a file cabinet for storage.

[21] We recognize that Vick did not send a courtesy copy of the complaint to the Insurer. However, Landlords' counsel acknowledged at the hearing on the motion to set aside default judgment that "[a] courtesy phone call may have been unnecessary. A courtesy copy of the complaint to [the Insurer] may have been unnecessary." Tr. p. 20. And even if Vick erred by failing to send a courtesy copy of the complaint to the Insurer, our supreme court made it clear in *Boles* that "counsel's failure to notify the carrier of the entry of a lawsuit would not, standing alone, justify the trial court in setting aside the default judgment." 449 N.E.2d at 290.

### B. Landlords' Assertion that they had Done all that was Required

[22] Landlords acknowledge that Vick's failure to notify the Insurer alone is insufficient to support setting aside default judgment. However, they contend that the failure to notify coupled with the Landlords' belief that they had done all they needed to do with regard to the claim was sufficient to support the trial court's order. Landlords cite to two cases from our supreme court and one case from this court to support their argument.

[23] In *Whittaker v. Dail*, 584 N.E.2d 1084 (Ind. 1992), Dail sued Whittaker for injuries sustained during an alleged battery, and Whittaker failed to attend the bench trial. *Id.* at 1084–85. After hearing testimony from Dail and her witnesses, the trial court entered judgment against Whittaker. Four days after trial, attorneys for Whitaker entered an appearance and moved to set aside the default judgment.

[24] Explaining his failure to appear, Whittaker testified that after he received notice of the pre-trial conference, he called his insurer and had an understanding that it would provide an attorney for him. A claims adjuster testified that she spoke with Whittaker and then attempted to employ a law firm to represent him. An attorney for the firm then testified and stated that he met with the claims adjuster, but it was his misunderstanding that he was to be employed to file a declaratory judgment against Whittaker, not to defend him. The trial court denied the motion to set aside default judgment, and Whittaker appealed.

[25] Our supreme court determined that the trial court abused its discretion when it failed to set aside default judgment because it was clear that a "'breakdown in communication' occurred giving rise to Whittaker's legitimately-held belief that his insurance carrier would hire a lawyer to represent him." *Id.* at 1087. The *Whittaker* court analogized the case to *Boles* and went on to explain, "we further recognize that *Boles* does not stand for the proposition that every breakdown in communication requires that a judgment be set aside." *Id.* The primary factors for the *Whittaker* court were that: (1) there was unchallenged credible testimony

of a breakdown in communication, and (2) there was no evidence of any "foot dragging" by Whittaker. *Id.*

[26] In *Flying J, Inc. v. Jeter*, 720 N.E.2d 1247 (Ind. Ct. App. 1999), Jeter was injured when she slipped and fell in a Flying J convenience store. *Id.* at 1248. She filed a complaint against Flying J, and, after Flying J failed to respond, Jeter filed for, and the trial court granted, default judgment. Flying J filed a motion to set aside the judgment asserting that a breakdown in communication had occurred, and the breakdown constituted excusable neglect. Flying J explained that one of its employees had instructed Flying J's insurance adjuster to retain a law firm when the suit was filed. The adjuster assumed that Flying J would inform him when it was served, and thus he never retained the law firm. Flying J thought it had confirmed that the adjuster would retain counsel immediately. The trial court denied the motion to set aside default judgment, and Flying J appealed.

[27] A panel of this court reversed the trial court's decision and explained, "Flying J contacted its insurance adjuster . . . and instructed him to hire a particular law firm to defend Jeter's negligence suit. Flying J reasonably believed it had taken the appropriate measures to hire an attorney." *Id.* at 1249. The court analogized the breakdown in communication to that in *Whittaker* and noted, "the failure on the part of Flying J to file an answer was not the result of its 'foot dragging' and instead due to its misunderstanding with [the adjuster]." *Id.* at 1250.

[28] And in *Coslett v. Weddle Brothers Construction Company*, Coslett's Furniture filed suit against Weddle Brothers for negligent delay in constructing a bridge. 798

N.E.2d at 860. When Weddle Brothers received the complaint, it sent a copy to its insurance agent. However, Weddle Brothers never responded to the complaint, and the trial court entered default judgment. A claims manager for the insurance company wrote to Weddle Brothers roughly six weeks later advising it that Coslett's Furniture's claims were not covered under the policy. After receiving this letter, Weddle Brothers immediately retained counsel and moved to set aside the default judgment. The trial court set aside the default judgment, but a panel of this court reversed, and our supreme court granted transfer.

[29] Our supreme court affirmed the trial court's ruling and relied in large part on the language the trial court used in its order. The trial court in *Coslett* stated, "One can easily argue that Weddle Brothers did respond to this lawsuit in a reasonable manner. It argues that it handled the complaints the way it always does, by notifying its insurance company." *Id.* at 862. The *Coslett* court determined that the trial court's ruling was supported by evidence of excusable neglect and deferred to its decision.

[30] Landlords cite to *Whittaker*, *Flying J*, and *Coslett* to support its claim that "there was an obvious breakdown between Landlords and their insurer" and that "Landlords believed they had done all they needed to do with the Complaint, since they informed Wamsley's counsel of the perceived defects in the claim, had already forwarded Wamsley's claim to their insurer, and since Wamsley['s] counsel had already been in contact with Landlords' insurer . . . ." Appellees' Br. at 22. Based on the facts and circumstances before us, we disagree.

[31] This was not an example of a breakdown in communication, but rather a complete lack of communication. Landlords' counsel at the hearing to set aside default judgment acknowledged, "Whether the defendant should have told her insurer after she got a copy of the complaint, clearly, she should have." Tr. p. 21. In *Whittaker*, *Flying J*, and *Coslett*, each defendant contacted their insurance agency about the suit, and in each case the breakdown in communication occurred *after* the insurers had been notified. Here, the Landlords never sent a copy of the complaint or summons to the Insurer, and there is no evidence that the Landlords ever had had any discussions about the suit with the Insurer prior to the trial court's entry of default judgment.

[32] The Landlords' contention that they believed they had done all they needed to do with the complaint is not persuasive. First, as stated above, Landlords never forwarded the complaint to the Insurer or discussed it with them. *Cf. Boles*, 449 N.E.2d at 289, *Whittaker*, 584 N.E.2d at 1086, *Coslett*, 798 N.E.2d at 860; *Flying J, Inc.*, 720 N.E.2d at 1248, *Shane v. Home Depot USA, Inc.*, 869 N.E.2d 1232, 1236 (Ind. Ct. App. 2007). Second, after receiving the complaint, New Generation Management, Inc.'s president placed the complaint in a filing cabinet for storage. And third, the Landlords are not defendants that are unaccustomed to receiving complaints or dealing with lawsuits. Wamsley introduced evidence that the Landlords were regularly involved in small claims and civil collections cases. *See* Appellant's App. pp. 72–75.

[33] Even if we accept the Landlords' contention that they are not "sophisticated litigants," we certainly cannot say that the Landlords are "sympathetic

defendant[s]" as envisioned by the *Smith* court, and we reiterate its holding that "[t]he judicial system simply cannot allow its processes to be stymied by simple inattention." 711 N.E.2d at 1262; *see also Huntington Nat. Bank v. Car-X Assoc. Corp.*, 39 N.E.3d 652, 658 (Ind. 2015) (holding that a bank familiar with foreclosure actions that fails to respond to a complaint and summons because of an employee's disregard for the mail cannot successfully allege excusable neglect). Wamsley notes, "Landlords manage an apartment complex. To be entrusted with such management of real property indicates a level of sophistication." Reply Br. at 27. We agree. While Landlords' status as a litigant may not rise to the level of "savvy" and "sophisticated" as the bank described by our supreme court in *Huntington National Bank*, 39 N.E.3d at 658, they are certainly experienced with litigation and the judicial procedural process through eviction proceedings, if nothing else.

[34] Simply put, it would be inaccurate to conclude, as our supreme court stated in *Boles* and implied in *Whittaker*, that Landlords "had done everything that apparently needed to be done" upon receipt of notice to secure representation and answer the complaint. *Boles*, 449 N.E.2d at 291. Vick stated in part during the hearing on the motion to set aside default judgment:

> Now, the idea of somebody looking at a complaint, seeing the summons, seeing that their company, of which they are president, is named in the complaint, responding to the complaint by a letter to opposing counsel and then not doing anything to follow up on that, I don't think that that's excusable neglect.

Tr. p. 23. We agree. Here, the Insurer was on notice that Wamsley would pursue and litigate all legal claims available. Appellant's App. p. 63. And the Landlords were properly served with a complaint and summons and never consulted with the Insurer. Vick's failure to send a courtesy copy of the complaint to the Insurer is insufficient on its own to set aside default judgment. *See, e.g., Boles*, 449 N.E.2d at 290. Landlords explain that they "never forwarded the Complaint to the insurer because they were unaware that the insurer was no longer being kept informed by counsel for Wamsley." Appellees' Br. at 27. While this may very well be true, it demonstrates a striking lack of attention by Landlords. Although Vick was doing his job by communicating with the Insurer about his client's claim, he had no duty to notify the Insurer of the lawsuit. *See, e.g., Boles*, 449 N.E.2d at 290. Rather, Landlords' "untimely response to service is wholly attributed to the defaulted part[ies'] inattentiveness," and "[t]here was no true breakdown in communication between agents of the party that caused the part[ies'] failure to appear." *Huntington Nat. Bank*, 39 N.E.3d at 657.

[35] Therefore, while we are aware of the high level of deference accorded to trial courts in these decisions and the preference in Indiana for resolving cases on the merits, the Landlords' inattention to the complaint and summons and their failure to consult with or discuss the suit with the Insurer may constitute neglect, but it does *not* constitute excusable neglect under Indiana Trial Rule 60(B)(1). *See Smith*, 711 N.E.2d at 1262; *Huntington Nat. Bank*, 39 N.E.3d at 658.

# Conclusion

[36] Based on the facts and circumstances before us, the trial court's decision to set aside Wamsley's default judgment against the Landlords for excusable neglect was an abuse of discretion. Accordingly, we reverse and remand to the trial court with direction to reinstate default judgment against Landlords and in favor of Wamsley.

Najam, J., and Barnes, J., concur.