

**FILED**

Dec 11 2019, 7:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Kevin S. Smith
Church, Church, Hittle & Antrim
Fishers, Indiana

Gregory A. Schrage
Church, Church, Hittle & Antrim
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

David J. Jurkiewicz
Nathan T. Danielson
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jun Li and Jimmy Chung Fai Tam, <br><br> *Appellant-Defendants,*[1] <br><br> v. <br><br> NextGear Capital, Inc., <br><br> *Appellee-Plaintiff.* | December 11, 2019 <br><br> Court of Appeals Case No. 19A-CC-608 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable William J. Hughes, Judge <br> The Honorable Darren J. Murphy, Magistrate <br><br> Trial Court Cause No. 29D03-1805-CC-4643 |

**Kirsch, Judge.**

---

[1] Default judgment was set aside against Jimmy Chung Fai Tam, and he, therefore, does not join in this appeal.  However, pursuant to Indiana Appellate Rule 17(A), a party at trial is a party on appeal.

[1] This case concerns a default judgment entered against Jun Li ("Li") for failure to answer or respond to a complaint filed in Hamilton County, Indiana by NextGear Capital, Inc. ("NextGear") against Li, Li's former business partner, Jimmy Chung Fai Tam ("Tam"), and their business, No Credit Check Auto Sales, Inc. ("Dealership"), all based in California. NextGear's complaint alleged default on a promissory note guaranteed by Li and Tam under which NextGear loaned money to Dealership. After NextGear did not receive responses to its complaint, it filed a motion for default judgment as to Li and Tam, which the trial court granted. Li and Tam filed a motion to set aside the default judgment, which the trial court granted as to Tam but not as to Li. Li appeals, raising the following dispositive issue for our review: whether the trial court abused its discretion in not setting aside the default judgment against him because relief should have been granted under Indiana Trial Rule 60(B)(1) for mistake, surprise, or excusable neglect.

[2] We reverse and remand.

## Facts and Procedural History[2]

[3] Dealership was a California corporation with its principal place of business in Hayette, California. *Appellant's App. Vol. II* at 9. Tam and Li, who were

---

[2] Oral argument was held on June 27, 2019 at Purdue University's Krannert Graduate School of Management. We extend many thanks. First, we thank counsel for the quality of the oral and written arguments, for participating in post-argument discussions with the audience, and for commuting to West Lafayette, Indiana. We especially thank the Executive Education Program at the Krannert Graduate School of Management for their accommodations and the students in the audience for their thoughtful post-argument questions.

business partners in Dealership, are individuals residing in California. *Id*. at 98. NextGear is a Delaware corporation with its principal place of business in Hamilton County, Indiana. *Id*. at 9.

[4] On September 30, 2013, Dealership and NextGear entered into a Demand Promissory Note and Loan and Security Agreement ("the Note"), under which NextGear loaned money to Dealership and took a security interest in Dealership's assets, including Dealership's automobile inventory. *Id*. at 10, 17-33. The Note set forth the terms upon which NextGear extended to Dealership a credit line in the original maximum principal sum of $450,000.00. *Id*. at 17-32. Tam signed the Note on behalf of Dealership as Dealership's President, and Li signed it as Dealership's Vice President. *Id*. at 28. Tam and Li also each executed individual guaranties on the Note. *Id*. at 10, 53-63. The Note was subsequently amended to increase the amount of Dealership's credit line. *Id*. at 48, 50.

[5] Not long after executing the Note and his individual guaranty, Li ceased having any relationship with the operation of Dealership, and Tam assumed individual control thereof. *Tr*. at 29. Other than the complaint and summons he received related to this lawsuit, Li never received any correspondence or communication from NextGear after he ceased involvement in Dealership. *Id*. at 29-30.

[6] Over a period of time, NextGear advanced funds to Dealership for the purchase of inventory that would serve as collateral pursuant to the terms of the Note. *Appellant's App. Vol. II* at 99. The Note detailed when Dealership was required to repay the amounts advanced by NextGear, as well as the timing and amounts of required interest payments and principal reduction payments. Dealership failed to repay the amounts advanced by NextGear as agreed under the Note. *Id*. at 99. Due to Dealership's failure to pay as required, NextGear declared the entire indebtedness due and owing under the Note to be immediately due and payable in full. *Id*. As of October 11, 2018, according to NextGear's records, the amount due to NextGear under the Note totaled $1,216,027.74. *Id*. at 100.

[7] On November 20, 2017, NextGear repossessed around one hundred of Dealership's vehicles due to Dealership's default on the Note. *Tr*. at 23; *Appellant's App. Vol. II* at 11. Neither Tam nor Li ever received any documentation from NextGear stating whether or when the vehicles would be sold. *Tr*. at 23, 29-30. On May 17, 2018, Yasha Rahimzadeh ("Rahimzadeh"), who is a California attorney representing Dealership and Tam, began negotiating with NextGear concerning Dealership's indebtedness to NextGear on the Note. *Def.'s Ex*. 1; *Tr*. at 20-21. Rahimzadeh called and exchanged numerous emails with NextGear's Senior Recovery Specialist and its Risk & Recovery Counsel between May 17, 2018 and June 28, 2018. *Def.'s Ex*. 1.

[8] On May 23, 2018, NextGear filed a complaint in Hamilton Superior Court against Dealership, Tam, and Li, alleging breach of contract on the Note

against Dealership, breach of contract on the personal guaranties against both Tam and Li, and conversion against all three parties. *Appellant's App. Vol. II* at 9-15. NextGear attempted service on all three parties, but was only able to perfect service on Li. *Id.* at 64-72; *Tr.* at 21. On June 11, 2018, Li was served with a copy of the complaint and a summons via a private process server. *Id.* at 68-72. Li did not appear in the lawsuit or file any pleadings in response to the complaint. *Id.* at 3-4.

[9] After receiving the complaint, Li called Tam immediately regarding the lawsuit. *Tr.* at 30. Li later testified that after he spoke with Tam, "Jimmy Tam talked to . . . his lawyer . . . the lawyer actually negotiating with NextGear," which was Rahimzadeh. *Id.* Tam also told Li to call Rahimzadeh, which Li did. *Id.* at 21, 30, 32. Li testified that Rahimzadeh told him that Rahimzadeh was "on top of it" and was attempting to negotiate a global resolution of NextGear's claims. *Id.* at 21-22, 30-31, 35. Rahimzadeh told Li and Tam that the settlement negotiations with NextGear not only pertained to Dealership's debt obligation, but also to Li's obligation as a guarantor. *Id.* at 21, 34. Tam also told Li that Rahimzadeh was negotiating with NextGear on Li's behalf. *Id.* at 22. Li agreed to contribute a certain amount of money as part of Rahimzadeh's settlement offer, and Rahimzadeh told Li that Rahimzadeh would "get [Li] a [sic] answer when NextGear respond [sic]." *Id.* at 30-31. Li testified that when he spoke with Rahimzadeh, he asked Rahimzadeh to represent Li in the litigation, and Rahimzadeh responded that he represented Tam and Dealership and because he represented Dealership, the representation "should . . . include

[Li]." *Id.* at 35. Li did not personally retain Rahimzadeh to represent him in the lawsuit, but testified that he thought he did not need to appear in the lawsuit by counsel to respond to the complaint because Rahimzadeh was negotiating with NextGear. *Id.* at 31, 32. After Li's initial conversations with Tam and Rahimzadeh about the lawsuit, Li contacted Tam approximately every two weeks to inquire about the status of the NextGear litigation and Rahimzadeh's negotiations with NextGear. *Id.* at 33-34.

[10] On October 18, 2018, NextGear filed a notice of dismissal without prejudice as to Dealership, and the trial court entered an order dismissing Dealership without prejudice from the lawsuit. *Appellant's App. Vol. II* at 3. On October 19, 2018, NextGear filed a motion seeking the entry of default judgment against Tam and Li. *Id.* at 76-78. On October 23, 2018, the trial court granted NextGear's motion and entered default judgment against Tam and Li and awarded damages in favor of NextGear in the amount $1,216,027.74. *Id.* at 116-17.

[11] On November 20, 2018, Indiana attorney Gregory A. Schrage entered an appearance for both Tam and Li in this case and filed a motion to set aside default judgment. *Id.* at 120-26. The motion alleged that default judgment should be set aside as to Tam because he was not properly served with the complaint and summons and should be set aside as to both Tam and Li due to excusable neglect. *Id.* at 122-26. NextGear filed an objection to the motion to set aside, and the trial court set the motion for a hearing on December 11, 2018.

*Id*. at 5, 127.  The trial court issued an order allowing Tam and Li to appear telephonically at the hearing.  *Id*. at 135.

[12]   At the hearing, Li and Tam testified concerning their beliefs that Rahimzadeh was representing both of them individually as well as Dealership with regard to NextGear's claims, and their understanding that because Rahimzadeh was negotiating with NextGear concerning its claims against them raised in the Indiana lawsuit, there was nothing more they needed to do to respond to the lawsuit.  For example, the following exchange occurred during Tam's testimony:

> Q: Okay.  Now, at the time that you became aware of the lawsuit that [Li] told you about, did you have any conversations with [Rahimzadeh], related to this lawsuit?
>
> A: Om, no, I left, I tell my lawyer [Rahimzadeh].  He handle it for me.  He handle all the negotiations for me and [Li].
>
> Q: Okay, and when you say he handled all the negotiations for you and [Li], did you have a conversation with [Rahimzadeh] related to negotiating on behalf of [Li] as well?
>
> A: Yeah.  Yes sir.  Yeah.  He defend me also.
>
> Q: Okay.  So, it was your understanding that when you went to [Rahimzadeh] related to this lawsuit that [Rahimzadeh] was negotiating on behalf of both yourself and [Li].  Is that right?
>
> A: Yes.  Yes.

Q: Okay.  And did you tell [Li] that [Rahimzadeh] was negotiating on his behalf as well?

A: Yes.

Q: Okay.  And is it your understanding that [Rahimzadeh] was the, was the individual that was to have the communications with [NextGear]?

A: Yes.

*Tr.* at 21-22.  Li gave similar testimony:

Q: Okay.  Now, when you received the lawsuit, did you talk to [Tam] about the lawsuit?

A: Yeah.  When I received the court letter, I talked to, ah, ah, [Tam] immediately, and ah, and [Tam] talked to ah, talked to his lawyer and om, the lawyer actually negotiating with NextGear.

Q: Okay.  And was it your belief that this attorney, [Rahimzadeh], was actually negotiating on your behalf as well?

A: Yes.

Q: Okay.  And why did you believe that?

A: Why?  Because . . . he say he represent the company also.

Q: Okay.  So, did you have conversations with [Rahimzadeh]?

A: Yes, I did.

Q: Okay. And in those conversations, what, what was the basis of those, of those discussions?

A: The, the lawyer say he would contact the NextGear to negotiate –

Q: Okay.

A: And ah, he would get me a [sic] answer when NextGear respond [sic].

Q: Okay, and without getting too far into the specifics, were you at that time, and in this negotiation, were you informing [Rahimzadeh], that you may pay certain amounts of money to resolve this situation?

A: Yes, I did.

Q: Okay. And, to the best of your knowledge, did [Rahimzadeh], make that offer to [NextGear]?

A: Yes. Of course.

Q: Okay. And to the best of your knowledge, were you, was it your belief that you need not appear in this case in Indiana while [Rahimzadeh] was negotiating with [NextGear]?

A: No, I don't because we have a lawyer negotiating with them, so I think for him respond to them already.

Q: Okay. So, it was your belief that you either had already responded by [Rahimzadeh] or that you didn't need to find an

Indiana attorney while [Rahimzadeh] was negotiating? I'm just trying to understand what you are saying.

A: Because we have a lawyer respond to them already so I didn't know I need to write, ah, ah respond the, the court in Indiana.

Q: Okay. And you believed that because your discussions with [Rahimzadeh] led you to believe that he was negotiating on your behalf as well?

A: Yes.

*Id*. at 30-31.

During the hearing on the motion to set aside default judgment, the trial court engaged in the following colloquy with Li:

Q: Did [Rahimzadeh] ever specifically tell you that he was going to represent you or your interest in this litigation?

A: Oh! Actually when I talk to the lawyer and I tell him, can you represent me also, and the lawyer says he represent [Tam] and also the company. Him and the company have my guarantor, so om, he on top of it, is what he said.

Q: But, he didn't specifically say that he's representing you as guarantor?

A: No. But, he say he represent the company and should that include me. That what he said.

Q: Did he tell you you should not respond to this summons or didn't have to take any action based on your receipt of the summons?

A: He say he negotiating with NextGear and I think that is a response already.

*Id*. at 35. Counsel for Tam and Li then asked Li the following related question:

Q: . . . Even if [Rahimzadeh] never, you never retained him technically as an attorney, was it your belief that he was negotiating on your behalf?

A: Yes, yes, that is what I believe.

*Id*. at 36.

[14] Following the hearing, the trial court issued an order allowing Tam and Li to file a supplemental brief in support of their motion to set aside default judgment. *Appellant's App. Vol. II* at 136-37. A supplemental brief was filed, which alleged that the default judgment should be set aside due to excusable neglect pursuant to Indiana Trial Rule 60(B)(1) and due to misconduct pursuant to Indiana Trial Rule 60(B)(3). *Id*. at 138-47. After NextGear filed a responsive brief, the trial court issued an order on February 12, 2019, granting in part and denying in part the motion to set aside default judgment. *Id*. at 7-8. The trial court granted the motion in favor of Tam and vacated the order of default judgment against him. *Id*. at 7. The trial court denied the motion as it pertained to Li, stating that, "[Li] admitted receiving proper service of the

complaint. The evidence presented did not establish excusable neglect to set aside the default judgment." *Id*. Li now appeals.

# Discussion and Decision

Li argues that the trial court abused its discretion when it denied his motion to set aside default judgment as to him. Our Supreme Court set out the following standard of review governing a trial court's decision to set aside a default judgment:

> The decision whether to set aside a default judgment is given substantial deference on appeal. Our standard of review is limited to determining whether the trial court abused its discretion. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law . . . . The trial court's discretion is necessarily broad in this area because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case . . . . A cautious approach to the grant of motions for default judgment is warranted in "cases involving material issues of fact, substantial amounts of money, or weighty policy determinations." In addition, the trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. Furthermore, reviewing the decision of the trial court, we will not reweigh the evidence or substitute our judgment for that of the trial court. Upon a motion for relief from a default judgment, the burden is on the movant to show sufficient grounds for relief under Indiana Trial Rule 60(B).

*Huntington Nat'l Bank v. Car-X Assocs. Corp.*, 39 N.E.3d 652, 655 (Ind. 2015) (quoting *Kmart Corp v. Englebright*, 719 N.E.2d 1249, 1253 (Ind. Ct. App. 1999), *trans. denied*) (internal citations omitted).

[16] Indiana Trial Rule 60(B)(1) provides in pertinent part that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons . . . mistake, surprise, or excusable neglect." A movant filing a motion pursuant to 60(B)(1) must allege a meritorious claim or defense. Ind. Trial Rule 60(B). A motion under Trial Rule 60(B)(1) does not attack the substantive, legal merits of a judgment, but rather addresses the procedural, equitable grounds justifying the relief from the finality of a judgment. *Kretschmer v. Bank of Am., N.A.*, 15 N.E.3d 595, 600 (Ind. Ct. App. 2014) (citing *Kmart*, 719 N.E.2d at 1253), *trans. denied*. There is no general rule as to what constitutes excusable neglect under Trial Rule 60(B)(1). *Id*. Each case must be determined on its particular facts. *Id*. The following facts have been held to constitute excusable neglect, mistake, or surprise:

> (a) absence of a party's attorney through no fault of party; (b) an agreement made with opposite party, or his attorney; (c) conduct of other persons causing party to be misled or deceived; (d) unavoidable delay in traveling; (e) faulty process, whereby party fails to receive actual notice; (f) fraud, whereby party is prevented from appearing and making a defense; (g) ignorance of the defendant; (h) insanity or infancy; (i) married women deceived or misled by conduct of husbands; (j) sickness of a party, or illness of member of a family.

*Kmart*, 719 N.E.2d at 1254.

[17] Li argues that the trial court abused its discretion when it denied his motion to set aside the default judgment because he alleges that his failure to file an answer to the complaint constituted "mistake" and "excusable neglect" under Trial Rule 60(B)(1). He contends that after communicating with Tam and Rahimzadeh, he believed that Rahimzadeh's negotiations with NextGear constituted the response necessary to the lawsuit against him. Li, therefore, did not believe that any additional response was required in the present litigation. He further asserts that, although the trial court seemed to focus on the fact that Li did not retain Rahimzadeh as his attorney, under Indiana precedent, the inquiry necessary to determine whether mistake or excusable neglect exists is whether Li understandably believed, albeit mistakenly, that there was nothing more that he needed to do concerning the litigation beyond what Rahimzadeh was already doing. He further asserts that he is a layperson, and his confusion about what he needed to do was understandable and excusable.

[18] In *Flying J, Inc. v. Jeter*, 720 N.E.2d 1247 (Ind. Ct. App. 1999), a panel of this court found excusable neglect and reversed the trial court's denial of a motion to set aside default judgment. In that case, a slip and fall occurred in the Flying J convenience store, and after Flying J failed to file an answer to the complaint, default judgment was entered against it. *Id.* at 1248. Flying J filed a motion to set aside the default judgment, alleging a "breakdown in communication" had occurred with its claims adjuster and such a breakdown constituted excusable neglect. *Id.* This court found that the trial court abused its discretion when it

failed to set aside the default judgment because Flying J's failure to file an answer was excusable in light of the fact that Flying J contacted its insurance adjuster, instructed him to hire a particular law firm, and reasonably believed that the adjuster had taken appropriate measures to hire an attorney. *Id*. at 1249-50. Although the insurance adjuster failed to timely hire counsel, resulting in the failure to file an answer, this was deemed to be due to a misunderstanding and excusable neglect. *Id*.

[19] In its analysis, the court in *Flying J* analyzed two Indiana Supreme Court cases involving whether a breakdown in communication was excusable neglect. In *Whittaker v. Dail*, 584 N.E.2d 1084 (Ind. 1992), our Supreme Court held that a breakdown in communication between an insurance company and its client, which resulted in the client not hiring an attorney, was a sufficient basis to set aside a default judgment. *Id*. at 1087. The client was under the impression that the insurance company was going to hire an attorney for him, and the insurance company adjuster thought that she had hired an attorney for the client. *Id*. at 1086. However, the attorney mistakenly believed that he was to file a declaratory judgment action against the client, rather than defend the client. *Id*. at 1087. The Supreme Court reasoned that there was no evidence of "foot dragging" on the part of the client, and that this breakdown in communication was excusable neglect. *Id.*

[20] In *Smith v. Johnston*, 711 N.E.2d 1259 (Ind. 1999), a doctor failed to open his mail and, therefore, did not discover that a medical malpractice suit had been filed against him and his medical practice group. *Id*. at 1261. The person who

regularly received the mail and handled all legal matters was in the process of leaving the group and was not in the office when the summons arrived. *Id*. at 1262. Therefore, a nurse who did not normally receive mail signed for the summons and placed it on the doctor's desk. *Id*. Even though the doctor was aware that the person who regularly received the mail was leaving the group, he did not open the summons until after a default judgment had been entered against him. *Id*. Our Supreme Court found this breakdown in communication to be "neglect, but not excusable neglect" and distinguished it from other cases which found breakdowns in communication excusable. *Id*. The Court stated that in the other cases, "the defendants did all that they were required to do but subsequent misunderstandings as to the assignments given to agents of the defendants resulted in a failure to appear." *Id.*

[21] More recently, our Supreme Court decided *Huntington National Bank v. Car-X Associates Corp.*, 39 N.E.3d 652 (Ind. 2015), where a defendant mortgagee bank was defaulted by a plaintiff judgment lienholder six days after the bank's deadline to respond to the complaint had expired. *Id*. at 654. Because the bank employee who typically received service of process was out on maternity leave, a different bank employee received the complaint, but due to his other duties, he did not refer the complaint to the bank's attorney until the very day the plaintiff obtained default judgment. *Id*. A few weeks later, the bank filed a Rule 60(B)(1) motion arguing that its untimely response was due to excusable neglect. *Id*. The trial court refused to set aside the judgment against the bank, and our Supreme Court affirmed the trial court, finding that there was no true

breakdown in communication that caused the bank's failure to appear. *Id.* at 657-58. Reasoning that the bank was a "savvy, sophisticated bank exceedingly familiar with foreclosure actions," the Court found that the failure to respond to a complaint and summons for "no reason other than an employee's disregard of the mail" did not constitute a successful allegation of a breakdown in communication sufficient to establish excusable neglect. *Id.* at 658.

[22] We find the present circumstances more comparable to the circumstances in *Whittaker* and *Flying J* than to those in *Smith* and *Car-X*. Here, after receiving NextGear's complaint, Li immediately contacted Tam, his former business partner, who had been responsible for Dealership for several previous years, and then contacted Rahimzadeh after being instructed by Tam to do so. Rahimzadeh told Li he was "on top of it" and was negotiating a settlement with NextGear, which included Li's obligation as a guarantor. *Tr* at 21-22, 34. Li agreed to contribute a certain amount of money as part of the settlement offer, and Rahimzadeh told Li that Rahimzadeh would get Li an answer when he received a response from NextGear. *Id.* at 30-31. Li testified that he asked Rahimzadeh to represent Li in the litigation, and Rahimzadeh responded that he represented Tam and Dealership and because he represented Dealership, the representation "should . . . include [Li]." *Id.* at 35. Rahimzadeh did not inform Li that there was anything more Li needed to do to protect his interests in the litigation, and Li believed that because Rahimzadeh was negotiating on his behalf, this was a sufficient response to NextGear's complaint on the

defendants' collective behalf and that there was nothing more he needed to do. *Id*. at 31.

[23] Under these circumstances, there was a clear breakdown in communication between Li and Rahimzadeh, where Li believed that Rahimzadeh was representing his interests in the lawsuit with NextGear, and such breakdown in communication resulted in Li not hiring his own attorney to respond to the complaint. There was no evidence of foot dragging by Li as he testified that he immediately contacted Tam and Rahimzadeh after he received the complaint, and, thereafter, he contacted Tam every two weeks to inquire about the status of the NextGear litigation and Rahimzadeh's negotiations with NextGear. *Id*. at 33-34. Unlike the bank in *Car-X*, which our Supreme Court found to be a "savvy, sophisticated bank exceedingly familiar with foreclosure actions," Li was merely a layperson, and there was no evidence that he was savvy or sophisticated in the procedures of loan default litigation. Therefore, like the defendants in *Whittaker* and *Flying J*, Li understandably, albeit mistakenly, believed that all was being taken care of and nothing more was required of him. We conclude that the neglect by Li in failing to file an answer to NextGear's complaint was excusable.

[24] However, "'[t]o prevail on a [Trial Rule] 60(B) motion, the petitioner is not only required to show mistake, surprise, or excusable neglect, but also must show that he has a good and meritorious defense to the cause of action.'" *Flying J*, 720 N.E.2d at 1250 (quoting *Butler v. Shipshewana Auction, Inc.*, 697 N.E.2d 1285, 1289 (Ind. Ct. App. 1998)). A meritorious defense is one which

would lead to a different result if the case was tried upon the merits. *Id.* To establish a meritorious defense, a party need not prove the absolute existence of an undeniable defense. *Kretschmer*, 15 N.E.3d at 601. Rather, a party need only make a *prima facie* showing of a meritorious defense. *Id.*

[25] Here, the evidence presented showed that under the terms of the Note, NextGear held a security interest in the automobiles purchased by Dealership with NextGear's funds. *Appellant's App. Vol. II* at 17. Therefore, the secured transaction between the parties was subject to Indiana Code section 26-1-9.1-626, which provides that if a creditor fails to abide by the applicable statutes governing secured transactions and the disposition of collateral, the deficiency related to that collateral is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of: (A) the proceeds of the collection, enforcement, disposition, or acceptance; or (B) the amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the statutes. Ind. Code § 26-1-9.1-626(3). Under Indiana Code section 26-1-9.1-611, NextGear was required to provide notice to Dealership, Tam, and Li of the disposition of the vehicles NextGear repossessed. At the hearing, evidence was presented that, after NextGear repossessed over 100 vehicles from Dealership, neither Li nor Tam received any notice as to the disposition of this collateral. *Tr.* at 23-25, 29-30. Because of NextGear's failure to provide this notice, there has been no showing that the disposition of the repossessed vehicles was done in a commercially reasonable manner and that the disposition would result in the alleged

deficiency that NextGear is requesting as damages.[3]  We conclude that Li presented a *prima facie* showing of a meritorious defense.

[26]  Based upon the record, we find that Li has demonstrated grounds for setting aside the entry of default judgment pursuant to Trial Rule 60(B)(1) and has alleged a meritorious defense.  Therefore, the trial court abused its discretion in denying his motion to set aside default judgment.  We reverse the trial court's judgment and remand to the trial court for further proceedings.

[27]  Reversed and remanded.

Baker, J., concurs.

Robb, J., concurs with separate opinion.

---

[3] On appeal, NextGear acknowledged that Li's testimony represented evidence that might constitute a meritorious defense to one of NextGear's claims against Li, if Li's allegations were true.  NextGear, therefore, did not additionally argue that Li has failed to allege a meritorious defense in support of his motion to set aside default judgment.

| | |
|---|---|
| Jun Li and Jimmy Chung Fai Tam, <br> *Appellants-Defendants,* <br><br> v. <br><br> NextGear Capital, Inc., <br> *Appellee-Plaintiff,* | Court of Appeals Case No. 19A-CC-608 |

## Robb, Judge, concurring.

I concur in the majority opinion but write separately to address the majority's use of *Smith v. Johnston*, 711 N.E.2d 1259 (Ind. 1999). Among other cases, the majority cites *Smith* for the proposition that the circumstances presented therein were not excusable neglect and then finds this case "more comparable to the circumstances in *Whittaker* and *Flying J* than to those in *Smith* and *Car-X*." Slip op. at ¶ 22. However, the "circumstances" leading to the result in *Smith* are more than just the neglect by defendant in failing to open his mail.

The trial court in *Smith* denied the defendant's motion to set aside a default judgment entered after the defendant failed to appear. If the holding of *Smith* was simply that there was no excusable neglect, one would expect the supreme

court would have affirmed the trial court's judgment. Instead, the supreme court reversed, holding that the default judgment must be set aside for misconduct "where the plaintiff's attorney filed suit and pursued the default judgment without notifying the attorneys whom she had been advised in writing were representing the defendant in the matter." *Id.* at 1260-61. In so holding, the supreme court looked to the Rules of Professional Conduct and determined that the plaintiff's attorney's failure to provide notice to attorneys who had been representing the defendant's interests in earlier proceedings in the same matter was prejudicial to the administration of justice and therefore misconduct warranting relief from the default judgment.

[30] *Smith* is an instructive case with regard to an attorney's obligations to the court and to the legal process and stands for a proposition greater than simply, "there was neglect, but it was not excusable neglect." With that observation, I concur in the majority opinion.