ATTORNEYS FOR APPELLANT
Bryan H. Babb
David J. Jurkiewicz
Nathan T. Danielson
Bose McKinney & Evans LLP
Indianapolis, Indiana

John David Cross
Mercer Belanger, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Christopher M. Keefer
Sopko, Nussbaum, Inabnit, & Kaczmarek
South Bend, Indiana



# In the
# Indiana Supreme Court

### No. 64S04-1504-MF-187

THE HUNTINGTON NATIONAL BANK,

*Appellant (Defendant below),*

v.

CAR-X ASSOC. CORP.,

*Appellee (Plaintiff below).*

Appeal from the Porter Superior Court, No. 64D02-1401-MF-398
The Honorable William E. Alexa, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 64A04-1405-MF-227

**August 21, 2015**

**David, Justice.**

After suing a mortgagee to foreclose on a lien, junior creditor Car-X Associates Corporation (Car-X) obtained a default judgment against co-defendant and senior creditor Huntington National Bank (Huntington) after Huntington failed to timely respond to the complaint

and summons. A few weeks later, Huntington filed a motion to set aside the default judgment, arguing that it was entitled to relief under Indiana Trial Rule 60(B)(1) because of its excusable neglect and under Indiana Trial Rule 60(B)(8) because such relief would be just and equitable under the circumstances. Finding that Huntington failed to establish either avenue of relief, the trial court denied its motion. The Court of Appeals, however, determined that Huntington had in fact proven the existence of excusable neglect and accordingly held that the trial court abused its discretion in deciding otherwise.

By their nature, cases involving claims of excusable neglect are highly fact sensitive. Here, the record reveals that the source of Huntington's untimely response was that, in the absence of the employee who typically received service, a supervisor failed to refer the summons and complaint to counsel until after the deadline had passed. "This is neglect, but not excusable neglect as the term appears in Rule 60(B)(1)." Smith v. Johnston, 711 N.E.2d 1259, 1262 (Ind. 1999).

Thus, we find that the trial court did not abuse its discretion in denying Huntington's motion to set aside Car-X's default judgment on this basis. But this conclusion does not terminate Huntington's appeal, for there is still the question of whether the denial of Huntington's motion was just and equitable under the circumstances. To best answer this question, we remand this case to the trial court to reevaluate the motion under Trial Rule 60(B)(8), especially in light of Huntington's meritorious defense to the underlying foreclosure suit (as Car-X concedes), the substantial amount of money involved, and Car-X's lack of prejudice from the delay, among other considerations.

## Facts and Procedural History

On October 19, 2005, SkyBank recorded a mortgage in the amount of $310,500 on the Woods family home. Subsequently, SkyBank merged into Huntington National Bank, so in this opinion we will refer to the pre-merger actions of SkyBank as done by Huntington.

2

On July 11, 2013, Car-X obtained a judgment against the Woods for $200,359 and recorded a notice of judgment lien against the property on September 23, 2013—nearly eight years after Huntington recorded its mortgage on the property. On January 8, 2014, Car-X sued to foreclose the judgment lien against the Woods. In addition to the Woods, Car-X's complaint named senior creditor Huntington as a defendant to answer as to any interest it may have in the real estate by virtue of its October 2005 mortgage. Car-X served Huntington's registered Indiana agent with the complaint and summons by certified mail on January 27, 2014, and Huntington received service the following day.

Because the Huntington employee who typically received service of process for the bank was away on maternity leave, Huntington's foreclosure supervisor received the complaint and summons in her stead on January 28, 2014, "but due to the volume of [his] regular duties" was unable to refer the service to counsel until February 25, 2014 (Appellant's App. at 50)—six days after Huntington's deadline to respond.

That same day, Car-X moved for default judgment against Huntington. Two days later, on February 27, the trial court entered default judgment in favor of Car-X and concluded that Car-X's interest in the real estate "is prior and superior to any and all interests . . . of Huntington." (Appellee's App. at 50.) With that language, Huntington's 2005 mortgage became subordinate to Car-X's 2013 judgment lien.

On March 14, 2014, Huntington filed a motion to set aside the default judgment pursuant to Indiana Trial Rule 60. Citing the well-established precedent that "Indiana law strongly prefers disposition of cases on their merits," (Appellant's App. at 10 (citing Coslett v. Weddle Bros. Const. Co., Inc., 798 N.E.2d 859, 861 (Ind. 2003)), Huntington argued that its untimely response amounted to no more than excusable neglect under Trial Rule 60(B)(1) and that under the circumstances it would be just and equitable pursuant to Trial Rule 60(B)(8) to set aside the default judgment and allow Huntington to protect its interest in the real estate.

3

Following a hearing, the trial court issued an order denying Huntington's motion to set aside the default judgment. Though noting that Indiana generally favors deciding cases on the merits instead of on default judgment, the trial court also referenced the "considerable equitable discretion" of the court when evaluating a motion to set aside a default judgment. (Appellant's App. at 5 (citing Coslett, 798 N.E.2d at 860–61).) In rejecting Huntington's Trial Rule 60(B)(1) excusable neglect argument, the trial court explained that "Defendant is not a lay person but a sophisticated bank, which should understand perfectly the ramifications of foreclosure suits and summons. Defendant properly received Plaintiff's complaint, and thus had a duty to appear and answer to defend any interests it may have had in the property." (Appellant's Br. at 7.) Similarly, regarding Huntington's contention that setting aside the default judgment would be fair and equitable under Trial Rule 60(B)(8), the trial court reasoned that "[i]t is difficult to find Huntington to be an 'unsuspecting litigant' given its sophistication" and consequently rejected its claim. (Appellant's Br. at 7.)

Huntington appealed, arguing that the trial court abused its discretion in denying relief under Trial Rule 60(B)(1) by ignoring Huntington's reasons for responding untimely and under Trial Rule 60(B)(8) by ignoring Huntington's substantial interest in the real estate as well as the equitable result. In a published decision, a majority of the Court of Appeals reversed and held that the trial court abused its discretion in denying Huntington's motion to set aside the default judgment. Huntington Nat'l Bank v. Car-X Assoc. Corp., 22 N.E.3d 687, 692 (Ind. Ct. App. 2014) (Barnes, J., dissenting). Car-X subsequently sought transfer, which we granted, thereby vacating the opinion below. Huntington Nat'l Bank v. Car-X Assoc. Corp., 29 N.E.3d 123 (table). See Ind. Appellate Rule 58(A).

**Standard of Review**

In Kmart Corp. v. Englebright, this Court set forth the standards governing a trial court's decision to set aside a default judgment.

4

The decision whether to set aside a default judgment is given substantial deference on appeal. Our standard of review is limited to determining whether the trial court abused its discretion. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. . . . The trial court's discretion is necessarily broad in this area because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case. . . . A cautious approach to the grant of motions for default judgment is warranted in "cases involving material issues of fact, substantial amounts of money, or weighty policy determinations." In addition, the trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. Furthermore, reviewing the decision of the trial court, we will not reweigh the evidence or substitute our judgment for that of the trial court. Upon a motion for relief from a default judgment, the burden is on the movant to show sufficient grounds for relief under Indiana Trial Rule 60(B).

719 N.E.2d 1249, 1253 (Ind. 1999) (internal citations omitted).

## I.       Excusable Neglect

We now seek to resolve two factual inquires: whether Huntington is entitled to relief from the default judgment under Trial Rule 60(B)(1) for excusable neglect or under Trial Rule 60(B)(8) for equitable reasons. Under subsection (B)(1), a trial court may relieve a party from a default judgment for "mistake, surprise, or excusable neglect" if the party files a motion within one year of the judgment and alleges a meritorious claim or defense. Addressed to the trial court's equitable discretion, "[a] Trial Rule 60(B)(1) motion does not attack the substantive, legal merits of a judgment, but rather addresses the procedural, equitable grounds justifying the relief from the finality of a judgment." Kmart, 719 N.E.2d at 1254 (citation omitted). Because "[t]here is no general rule as to what constitutes excusable neglect under Trial Rule 60(B)(1)," "[e]ach case must be determined on its particular facts." Id. (citations omitted).

Upon review, a majority of the Court of Appeals concluded that the trial court abused its discretion in denying Huntington's motion to set aside the default judgment. Huntington Nat'l Bank, 22 N.E.3d at 692. In reaching the conclusion that Huntington's failure to respond to Car-X's complaint constituted excusable neglect under Trial Rule 60(B)(1), the majority looked to: (1) the short length of delay; (2) Huntington's security interest and the amount at issue; (3) the absence of evidence of prejudice to Car-X by the delay; and (4) the severity of the sanction of default judgment. Id. Furthermore, the majority explained that Huntington alleged a meritorious defense—its mortgage on the real estate—and established that the result of the proceedings would be different if the default judgment were to be set aside. Id.

To the contrary, in his dissent Judge Barnes observed that Huntington had evidently failed to adequately cover the duties of the employee who typically received service during her maternity leave; as a result, the time period for responding to the complaint ran, and Huntington did not respond until at least twenty days after the deadline. Id. at 693. Judge Barnes continued,

> Excusable neglect to me is just that: *excusable* neglect, not just neglect. It is something that can be explained by an unusual, rare, or unforeseen circumstance, for instance. One employee's maternity leave is not such a circumstance and should not be used as an excuse for delaying judicial proceedings beyond the clear deadlines set by our Trial Rules, especially where a large and sophisticated party such as Huntington is concerned.

Id. at 694. Accordingly, Judge Barnes would have deferred to the trial court's discretion and affirmed the denial of Huntington's motion to set aside the default judgment. Id.

Judge Barnes grounded his reasoning in Smith, 711 N.E.2d 1259. There, the plaintiff filed a medical malpractice claim against Dr. Smith and his surgical group. Id. at 1261. The plaintiff served the defendants with the complaint and summons via certified mail at their place of business, but the office manager, who ordinarily handled legal matters, was in the process of quitting his job and was out of the office at the time. Id. at 1261–62. A nurse who did not normally receive mail placed the complaint and summons on Dr. Smith's desk, but the doctor did not see it until after the

6

plaintiff secured a default judgment in the amount of $750,000 against him.  Id. at 1262.  Upon discovery of the complaint and summons, Dr. Smith filed a motion to set aside the default judgment in part under Trial Rule 60(B)(1) for excusable neglect based on a "breakdown in communication."  Id. at 1261.  The trial court denied the motion, the Court of Appeals affirmed the trial court, and we granted Dr. Smith's petition to transfer.  Id.

Though ultimately we resolved the case under another subsection of Trial Rule 60(B), our explanation of our rejection of Dr. Smith's excusable neglect claim is instructive to the present circumstances, especially given the factual similarities between the cases.  Like Huntington's foreclosure supervisor, Dr. Smith was aware that the employee who typically handled legal mail was no longer doing so but nevertheless ignored the complaint and summons until after a default judgment had been entered.  This preventable oversight led us to conclude that "[t]his is neglect, but not excusable neglect as the term appears in Rule 60(B)(1)," for "we [did] not agree that the failure of Smith to read his mail amounts to a breakdown in communication sufficient to qualify as excusable neglect."  Id. at 1262.  Accordingly, we found that the trial court did not abuse its discretion in refusing to set aside the default judgment.  Id.

Additionally, in reaching our conclusion we distinguished Smith from our prior decisions finding excusable neglect for a breakdown in communication:  "[i]n those cases the defendants did all that they were required to do but subsequent misunderstandings as to the assignments given to agents of the defendants resulted in the failure to appear."  Id.  One such case is Boles v. Weidner, 449 N.E.2d 288 (Ind. 1983).  In this case arising out of an auto accident, a default judgment was entered against Weidner after he failed to respond to Boles' complaint and summons.  Id. at 289.  However, Weidner had delivered the complaint and summons to his insurance agent, who was then supposed to notify the insurance carrier of the suit, but Weidner's carrier did not receive notice.  Id.  Weidner filed a motion to set aside the default judgment, contending that the breakdown in communication between his agent and carrier constituted excusable neglect.  Id.  The trial court agreed and granted Weidner's motion, but the Court of Appeals reversed, finding insufficient facts to justify excusable neglect.  Id. at 289–90.

7

Weidner successfully sought transfer, and we affirmed the trial court, as "Weidner had done everything that apparently needed to be done" and it was the "breakdown in communications" between the agent and carrier that resulted in the failure to employ counsel and ensuing entry of default judgment against Weidner. Id. at 291. Thus, we held that the trial court did not abuse its discretion in finding Weidner's failure to appear and defend the lawsuit a result of excusable neglect. Id.

Another example of a legitimate breakdown in communication through no fault of the defaulted party occurred in Whittaker v. Dail, 584 N.E.2d 1084 (Ind. 1992). Dail filed a battery suit against Whittaker, who then contacted his insurance company and was informed that it would employ an attorney to defend him at trial. Id. at 1084, 1086. The insurance attorney, however, believed he was supposed to file a declaratory judgment action against Whittaker rather than defend him. Id. at 1086–87. Accordingly, the attorney failed to appear and default judgment was entered against Whittaker. Id. at 1086. Whittaker subsequently filed a motion to set aside the default judgment, which the trial court denied. Id. at 1087. A split Court of Appeals affirmed the trial court, but this Court granted transfer and reversed the trial court for abusing its discretion in denying Whittaker's motion. Id. "The obvious import of the evidence is that a 'breakdown in communication' occurred giving rise to Whittaker's legitimately-held belief that his insurance carrier would hire a lawyer to represent him." Id. Importantly, "there was no evidence of any 'foot dragging' on the part of Whittaker." Id. Though we cited Boles as holding that a breakdown in communication resulting in failure to employ counsel "is a sufficient basis" to support a trial court's finding of excusable neglect, we were careful to recognize "that Boles does not stand for the proposition that *every* breakdown in communication *requires* that a judgment be set aside." Id.

After reviewing Boles, Whittaker, and Smith, it is apparent that the facts at hand are appreciably more similar to the latter than the two former. As in Smith, the entity's untimely response to service is wholly attributable to the *defaulted party's* inattentiveness. There was no true breakdown in communication between agents of the party that caused the party's failure to appear; rather, the party was subjected to a default judgment because, in the absence of the employee typically responsible for handling legal mail, another employee let the notice sit on his

8

desk until the time to respond had past. Comparatively, in <u>Boles</u> and <u>Whittaker</u> the defaulted party timely passed notice on to his insurer, and it was the party's agent who was responsible for an inadvertent breakdown in communication. It would be far from accurate to conclude, as we stated in <u>Boles</u> and implied in <u>Whittaker</u>, that Huntington "had done everything that apparently needed to be done" upon receipt of notice to secure representation and answer the complaint. <u>Boles</u>, 449 N.E.2d at 291.

Further, unlike in <u>Smith</u>, Huntington is a *bank* that "understood perfectly the ramifications of foreclosure suits and summons." <u>Security Bank & Trust Co. v. Citizens Nat. Bank of Linton</u>, 533 N.E.2d 1245, 1247 (Ind. Ct. App. 1989). A savvy, sophisticated bank exceedingly familiar with foreclosure actions that fails to respond to a complaint and summons for no reason other than an employee's disregard of the mail cannot successfully allege a breakdown in communication sufficient to establish excusable neglect. "The judicial system simply cannot allow its processes to be stymied by simple inattention." <u>Smith</u>, 711 N.E.2d at 1262. Therefore, under the facts of this case, we hold that the trial court did not abuse its discretion and affirm its denial of Huntington's motion to set aside the default judgment for excusable neglect under Trial Rule 60(B)(1).

## II. "Any Reason Justifying Relief"

Having determined that Huntington is not entitled to relief under Trial Rule 60(B)(1), we now turn our attention to another subset of Trial Rule 60, subsection (B)(8), in order to resolve whether under the circumstances the trial court abused its discretion in failing to set aside the default judgment for equitable reasons, among them Huntington's meritorious defense of a prior mortgage.

Under Trial Rule 60(B)(8), a trial court has the discretion to set aside a default judgment for "any reason justifying relief from the operation of the judgment" other than those set forth in

9

other subsections of Trial Rule 60[1] if the party's motion is filed "within a reasonable time" and the party alleges a meritorious claim or defense. "When a Trial Rule 60(B)(8) motion is filed, the burden is on the movant to demonstrate that relief is both necessary and just." Gipson v. Gipson, 644 N.E.2d 876, 877 (Ind. 1994) (citation omitted). As with subsection (B)(1), the decision whether to grant or deny a party's motion is left to the trial court's equitable discretion and highly fact specific. Id.

In addition to claiming its 2005 mortgage as a meritorious defense to Car-X's underlying suit,[2] Huntington lists five considerations it contends support setting aside the default judgment under Trial Rule 60(B)(8) for equitable reasons: (1) its substantial interest in the real estate through its mortgage; (2) its "excusable reason" for untimely responding; (3) its quick action to set aside the default judgment once the complaint and summons were discovered; (4) its significant loss if the default judgment is not set aside; and (5) the minimal prejudice to Car-X should the case be reinstated. (Appellant's Br. at 9.) We think it best to remand to the trial court to reevaluate Huntington's motion upon consideration of these and all relevant circumstances[3]—especially Huntington's meritorious defense to the underlying suit, the substantial amount of money involved, and the lack of prejudice to Car-X. Should the trial court find that Huntington demonstrated sufficient grounds for relief from default judgment under Trial Rule 60(B)(8), then the case shall proceed to a resolution on its merits.

Lastly, we caution that the important and even essential policies necessitating the use of default judgments—maintaining an orderly and efficient judicial system, facilitating the speedy

---

[1] These subsections are (B)(1) (mistake, surprise, or excusable neglect); (B)(2) (any ground that could be raised on motion to correct error); (B)(3) (fraud); and (B)(4) (default without proper notice).

[2] At oral argument, Car-X conceded that Huntington has a meritorious defense.

[3] The trial court may also consider our finding that Huntington failed to establish excusable neglect.

determination of justice, and enforcing compliance with procedural rules—should not come at the expense of professionalism, civility, and common courtesy. Standard Lumber Co. of St. John, Inc. v. Josevski, 706 N.E.2d 1092, 1095 (Ind. Ct. App. 1999). "An extreme remedy," a default judgment "is not a trap to be set by counsel to catch unsuspecting litigants" and should not be used as a "gotcha" devise when an email or even a phone call to the opposing party inquiring about the receipt of service would prevent a windfall recovery and enable fulfillment of our strong preference to resolve cases on their merits. Smith, 711 N.E.2d at 1264; Coslett, 798 N.E.2d at 861.

This is especially true where, as here, it is easy to locate the opposing party or counsel, and just as simple to pick up a phone and remind counsel of an imminent deadline—a courtesy every attorney would like (and may very well need) extended to him or her at some point in his or her career. Such a moment of professionalism and civility can reap significant dividends, both in the resolution of the case itself and the legal community in general. By fostering a spirit of fair competition and collegiality, courteous attorneys better serve their clients and greatly improve the quality of our profession. After all, the practice of law is a marathon, not a sprint, and attorneys would be well advised to remember that procedural rules are not intended to be used as swords to obtain judgments. Our profession deserves better. Though trial courts may continue to grant default judgments where a party undoubtedly fails to defend or prosecute a lawsuit, we strongly urge attorneys not to resort to seeking such a measure unless and until no other method would move the case forward.

**Conclusion**

We affirm the trial court's denial of Huntington's motion to set aside the default judgment under Trial Rule 60(B)(1) for excusable neglect but remand to the trial court to reconsider whether equitable reasons support granting Huntington's motion under Trial Rule 60(B)(8).

Rush, C.J., Dickson, and Massa, J.J., concur.

Rucker, J., concurs in result.

11