

FILED

Jan 24 2019, 10:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Clint A. Zalas
James F. Groves
Lee, Groves, and Zalas
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Steven P. Lammers
Debra A. Mastrian
Smith Amundsen LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Clint Fields,

*Appellant-Plaintiff,*

v.

Safway Group Holdings, LLC,

*Appellee-Defendant*

January 24, 2019

Court of Appeals Case No.
18A-CT-247

Appeal from the St. Joseph
Superior Court

The Honorable Steven L.
Hostetler, Judge

Trial Court Cause No.
71D07-1703-CT-136

**May, Judge.**

Clint Fields appeals the trial court's vacation of a default judgment pursuant to Indiana Trial Rule 60(B)(8).[1] As the trial court did not abuse its discretion when it granted the equitable relief provided in Trial Rule 60(B)(8), we affirm.

# Facts and Procedural History

On February 10, 2017, while working as a carpenter for Crown Corr, Inc., on the University of Notre Dame Crossroads construction project ("Crossroads project"), Fields fell more than forty feet from scaffolding. Fields sustained significant injuries and was still wheelchair-bound after almost a year.

Barton Malow Company ("Barton Malow") was the general contractor on the Crossroads project. Crown Corr, a subcontractor, rented the scaffolding material from Safway. While Safway assembled and disassembled other scaffolding within the Crossroads project, Crown Corr assembled the scaffolding for the area where Fields was working.

Barton Malow insured Safway through its Company Contractor Controlled Insurance Program ("CCIP"), provided by XL Catlin insurance company. Sedwick Claims Management Services, Inc., ("Sedgwick") managed the claims from CCIP participants.

---

[1] Safway cross-appeals the trial court's denial of its motion pursuant to Indiana Trial Rule 60(B)(1). However, as we affirm the trial court's grant pursuant to Indiana Trial Rule 60(B)(8), we need not address Safway's cross-appeal.

[5] On February 10, 2017, the day of the accident, Barton Malow conducted an investigation. It found Fields had "[f]ailed to maintain a 100% tie-off to a point independent of positioning device." (App. Vol. II at 42). Subcontractors were required to abide by this safety protocol.

[6] On February 15, 2017, the engineering firm Wiss, Janney, Elstner Associates, Inc., ("WJE") conducted an "inspection of site and scaffold conditions," (*id*. at 124), "to determine a probable cause of the accident relative to the design, assembly, and condition of the scaffold associated with the accident." (*Id*. at 123.) WJE was informed the "scaffold was not modified in any way . . . following the accident, short of installing a wood barrier at the ladder to restrict access." (*Id*. at 124.) WJE "did not observe any obvious capacity deficiencies with the design." (*Id*.) WJE observed the scaffold was in "good condition with the exception of the bracket damage at one end of the [horizontal rail that fell with Fields.]" (*Id*. at 126.) WJE determined this type of damage "suggests the bracket was either not connected or became disconnected prior to the accident." (*Id*.) Therefore, WJE listed the probable cause of the accident was Fields' weight "overloading" the north bracket connection "because the south bracket was not securely connected." (*Id*. at 127.)

[7] On March 28, 2017, Fields filed suit against Safway, asserting negligence and products liability claims. Safway was served on March 31, 2017. Assistant General Counsel of Safway Chris Schilder reviewed the complaint and forwarded it to Jennifer Boland, the "Insurance and Wrap Up Advisor for Safway Group Holding, LLC," (*id*. at 44), so she could provide it to Barton

Malow. Schilder would have referred general liability lawsuits directly to local counsel, but because Safway participated in the CCIP under Barton Malow, the claim had to be forwarded to Barton Malow. Barton Malow would then send it to Sedgwick, which was to manage the claim for the CCIP and retain counsel to defend the claim.

[8] When Boland received the complaint, April 3, 2017, she forwarded it to Brian McGrath, the insurance broker for CCIP. McGrath then forwarded it to Barton Malow as the general contractor. On April 4, 2017, Barton Malow sent the complaint to Sedgwick for handling. Jeff Marlowe, team leader at Sedgwick, reviewed the complaint and directed his team to contact Fields' counsel Clint Zalas, to "to obtain an extension of time to answer the Complaint filed in this case." (*Id*. at 48.)

[9] Corky Butler, the initial claims professional at Sedgwick, allegedly called Zalas and left a message; however, the trial court refused to consider whether that call was made because there was no evidence of the call beyond an affidavit by Marlowe, making the statement inadmissible hearsay. Butler questioned whether the claim was covered by CCIP or by Safway's general liability insurance policy. Although Butler attempted to contact numerous people to determine the appropriate coverage, Butler was unable to determine whether the claim should be covered by CCIP or by Safway's general liability insurance policy. Butler continued on the assumption Safway was to retain its own counsel through its own general liability insurance coverage.

[10] Boland and Schilder were out of the office at various times during the month of April. Along with his other duties, Schilder was involved in the annual audit of Safway. Additionally, Safway had been "acquired by [its] competitor on March 20 . . . so [Schilder] was working a lot[.]" (*Id.* at 73-74.) Schilder was appointed a "functional leader for th[e] integration process." (*Id.* at 74.) Neither Boland nor Schilder took further action with regard to Fields' lawsuit.

[11] No counsel entered an appearance on behalf of Safway, and no answer was filed in response to the complaint, so on April 25, 2017, Fields filed a motion for default judgment. On April 26, 2017, the trial court granted the motion, entering an order of default as to liability but reserving the question of damages.

[12] Boland, unaware of the partial default judgment, followed up with McGrath on April 26, 2017, and on April 27, 2017. She also contacted several people at Barton Malow on April 27, 2017, in an attempt to confirm the matter was being handled. (*Id.* at 95.) On April 28, 2017, Sedgwick received notice of the default judgment and reassigned the case to Mallory Hildreth, who immediately contacted Zalas to request additional time to respond. Hildreth left a message with Zalas' receptionist but did not receive a response. On May 3, 2017, Hildreth again called Zalas but did not receive a response.

[13] On May 1, 2017, Hildreth confirmed Safway was covered by CCIP and contacted the insurance carrier to obtain authority to hire defense counsel. On May 26, 2017, via counsel hired by CCIP, Safway filed a motion to set aside the default judgment. On July 17, 2017, the trial court entered an order permitting

Fields to conduct discovery "to test the credibility of [Safway's] claim of excusable neglect and also to test the viability of its assertion that it has a meritorious defense[.]" (*Id.* at 55.)

[14] On January 16, 2018, after discovery was conducted, the trial court held a hearing and granted Safway's motion. After having found Safway had presented *prima facie* evidence of meritorious defenses, the trial court found Safway's actions did not constitute "excusable neglect" such that it could be given relief under Trial Rule 60(B)(1) because Safway had "simply dropped the ball." (Appealed Order at 3.) The court found Safway's behavior "certainly constitute[s] neglect[,]" (*id.* at 4), but the court refused to call that negligence excusable "for purposes of Trial Rule 60(B)(1)." (*Id.*)

[15] The trial court then addressed Safway's Trial Rule 60(B)(8) argument that the circumstances constituted "any reason justifying relief[.]" Specifically, the trial court used the factors delineated in *Huntington National Bank v. Car-X Association Corporation*, 39 N.E.3d 652 (Ind. 2015), to determine whether Safway could be granted relief under that portion of the rule. It determined that "most, if not all of such factors weigh in favor of vacating the judgment." (Appealed Order at 4.) The trial court found that while not excusable neglect, "Safway's actions in not timely responding are . . . plausible and understandable." (*Id.*)

[16] The trial court found Safway had taken prompt action once it "learned of the entry of default and the partial judgment." (*Id.*) It also found the "amount of

money at issue is substantial, and Fields will not be procedurally prejudiced by vacating the entry of default and the partial judgment." (*Id*. at 4-5.)

As to financial harm, the trial court stated it had considered Safway's in-house counsel's testimony that "Safway would not be financially harmed if the Motion is not granted." (*Id*. at 5.) However, it concluded it could not consider insurance coverage in this matter and that "someone will be financially prejudiced if the entry of default and partial judgment are not vacated." (*Id*.) Finally, the trial court found that our Indiana Supreme Court has indicated a preference for resolving cases on their merits. Such a preference, the trial court concluded, "tips the balance in favor of vacating the entry of default and partial judgment dated April 26, 2017." (*Id*. at 6.)

# Discussion and Decision

Fields appeals the trial court's grant of Safway's motion to set aside default judgment pursuant to Trial Rule 60(B)(8). Fields alleges that the trial court abused its discretion when it granted Safway relief from default judgment without requiring Safway to present evidence of exceptional circumstances to justify that relief and that the trial court granted relief "based solely upon factually unsupported equitable considerations[.]" (Br. of Appellant at 8.)

## Standard of Review

A decision whether to set aside a default judgment is entitled to deference and is reviewed for abuse of discretion. *Coslett v. Weddle Bros. Const. Co., Inc.,* 798

N.E.2d 859, 861 (Ind. 2003), *reh'g denied.* Any doubt about the propriety of a default judgment should be resolved in favor of the defaulted party. *Id.* Indiana law strongly prefers disposition of cases on their merits. *Id.* Our standard of review is limited to determining whether the trial court abused its discretion. *Bennett v. Andry,* 647 N.E.2d 28, 31 (Ind. Ct. App. 1995). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind. 1993).

[20] Where the trial court has entered findings of fact and conclusions of law, our standard of review is two-tiered: we determine whether the evidence supports the trial court's findings, and whether the findings support the judgment. *Indianapolis Ind. Aamco Dealers Adver. Pool v. Anderson,* 746 N.E.2d 383, 386 (Ind. Ct. App. 2001). We will not disturb the trial court's findings or judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them. *Culley v. McFadden Lake Corp.,* 674 N.E.2d 208, 211 (Ind. Ct. App. 1996). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Carroll v. J.J.B. Hilliard, W.L. Lyons, Inc.,* 738 N.E.2d 1069, 1075 (Ind. Ct. App. 2000), *trans. denied.* We will neither reweigh evidence nor judge the credibility of witnesses, considering instead only the evidence favorable to the judgment and all reasonable inferences to be

drawn therefrom. *Donavan v. Ivy Knoll Apts. P'ship*, 537 N.E.2d 47, 50 (Ind. Ct. App. 1989).

## Exceptional Circumstances

[21] Fields seems to be operating on the notion that Safway was required to present evidence of timely filing, a meritorious defense, exceptional circumstances, *and* equitable considerations. Further, Fields argues the trial court comingled the "exceptional circumstances" and the "equitable considerations" and therefore, misapplied the law. We disagree, because the equitable considerations can constitute the exceptional circumstances presented to the trial court.

[22] Indiana Trial Rule 60(B)(8) allows a trial court to grant relief from judgment for "any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4)." The motion for relief must be filed within a reasonable time and the movant must present a meritorious defense. Ind. Trial Rule 60(B).

[23] In *Brimhall v. Brewster*, 684 N.E.2d 1148 (Ind. Ct. App. 2007), *trans. denied*, we held a trial court may grant this relief "upon a showing of exceptional circumstances justifying extraordinary relief [so long as the] exceptional circumstances do not include mistake, surprise, or excusable neglect[.]" *Id*. at 1153. Therefore, in *Brimhall*, we delineated the "any reasons" from Trial Rule 60(B)(8) as "exceptional circumstances."

[24] In *Huntington*, our Indiana Supreme Court held that, provided the movant demonstrated a meritorious defense and filed the motion for relief in a timely

fashion, "the decision whether to grant or deny that party's motion is left to the trial court's equitable discretion and [is] highly fact specific." *Huntington Nat'l Bank*, 39 N.E.3d at 659 (citing *Gipson v. Gipson*, 644 N.E.2d 876, 877 (Ind. 1994)). It further illustrated how the court could consider whether to grant that equitable relief by laying out five factors that were pertinent to that case, *i.e.,* the bank's interest in the real estate, the bank's "excusable reason" for untimely responding, the bank's quick action once the default judgment was discovered, the bank's significant loss if the default judgment were not set aside, and the "minimal prejudice" to the plaintiff "should the case be reinstated." *Id*. Thus, to determine whether exceptional circumstances existed, the trial court was ordered to consider those five factors.

[25] Eight years later, in *Dalton Corp. v. Myers*, 65 N.E.3d 1142 (Ind. Ct. App. 2016), *trans. denied*, we explained in more detail that to prevail on a Trial Rule 60(B)(8) motion, "the movant must 1) allege sufficient grounds showing exceptional circumstances justifying relief from the operation of the judgment other than those set forth in Rule 60(B)(1)-(4), 2) allege a meritorious defense, and 3) file the motion within a reasonable time." *Id*. at 1145. Further, we stated that "[i]n determining whether exceptional circumstances warrant setting aside a default judgment, the trial court may also consider the equitable considerations set forth by each party." *Id*. Therefore, while the movant is required to show exceptional circumstances, the trial court is allowed to consider the equitable considerations presented by the parties in order to decide if exceptional circumstances have been proven.

The rule and the caselaw do not require the movant to present evidence of exceptional circumstances independent of the equitable reasons for relief; rather, they require that the movant present proof of "exceptional circumstances justifying extraordinary relief[,]" *Brimhall*, 684 N.E.2d at 1153, and that the movant can demonstrate that by presenting sufficient evidence of equitable considerations, such as the five factors listed in *Huntington*, 39 N.E.3d at 659. *See Dalton*, 65 N.E.3d at 1145 (trial courts can find required exceptional circumstances by considering equitable considerations presented by the parties). Therefore, as the trial court made findings of equitable reasons and concluded those reasons, together with our Indiana Supreme Court's preference to decide cases on their merits, "tip[ped] the balance in favor of vacating the entry of default and partial judgment[,]" (Appealed Order at 6), we cannot find the trial court abused its discretion. *See Wamsley v. Tree City Village*, 108 N.E.3d 334, 336 (Ind. 2018) (if even slight evidence exists, "[o]ur deferential standard of review compels us to affirm the trial court").

## Evidence of Equitable Factors

### *Safway's Harm as a Result of the Judgment*

Fields argues the trial court ignored evidence Safway would not be financially harmed by the default judgment. However, the trial court specifically noted it had considered that testimony but found it could not "consider such insurance in determining a motion under Trial Rule 60(B)(8) [because] someone will be financially prejudiced if the entry of default and partial judgment are not vacated." (*Id*. at 5.) Therefore, the trial court did not ignore that evidence.

Fields' arguments are an invitation for us to reweigh the evidence, which we cannot do. *See Prime Mort. USA, Inc. v. Nichols*, 885 N.E.2d 628, 656 (Ind. Ct. App. 2008) (appellate court may not reweigh evidence when trial court makes findings of fact).

### *Characterization of Safway's Inexcusable Neglect*

[28] Fields argues the trial court misinterpreted the law and went against the logic and effect of the facts when it characterized Safway's inexcusable neglect as "plausible and understandable[.]" (Appellant's Br. at 19 (*quoting* Appealed Order at 4).)

[29] The trial court found it "accept[ed] as true for purposes of the Motion to Set Aside the facts as alleged by Safway concerning Safway's actions after receiving the Complaint and Summons."[2] (Appealed Order at 3.) There was more to Safway's actions than merely the fact that its employees had not followed the correct procedure. This complaint had to traverse through three entities: Safway, Barton Marlow and Sedgwick. We cannot disagree with the trial court's reasonable inference that, while the actions of Safway employees are not

---

[2] The allegations the trial court references here are found in Safway's "Memorandum in Support of Motion to Set Aside Default Judgment," (App. Vol. II at 28), and Safway's "Supplemental Memorandum[.]" (*Id.* at 58.) For the purposes of showing the sequence of events after Safway received the complaint, they include, amongst other things: "Affidavit of Jennifer Boland," (*id.* at 45) (stating Safway received the complaint on March 31, 2017, and referred it to Barton Marlow to "be processed within the [] CCIP" on April 3, 2017); "Affidavit of Ronald Torbert[,]" (*id.* at 42) (Barton Marlow was notified of the complaint on April 3, 2017 and referred the claim to Sedgwick on April 4, 2017); and "Affidavit of Jeff Marlowe," (*id.* at 47-50) (stating he opened a claim for Safway on April 4, 2017, he assigned Corky Butler to the claim, Corky's actions therein, and Mallory Hildreth's subsequent assignment to the matter).

excusable, the situation created here was exceptional and thus, "plausible and understandable." (*Id.*); *see Huntington*, 39 N.E.3d at 658 (proper for trial court to consider "'excusable reason' for untimely responding" as an equitable reason for relief).

### *Prejudice*

[30] Fields contends the trial court abused its discretion by finding Fields was not prejudiced by the setting aside of the default judgment. Fields argues Safway "*never* broached the issue of procedural prejudice[.]" (Appellant's Br. at 22) (emphasis in original). Fields acknowledges Safway briefly, at the hearing, mentioned the subject of prejudice and that, after discovery, the claim would be reinstated within a year and that fact showed a lack of prejudice to Fields. (*See* Tr. Vol. II at 21 (counsel for Safway states the short timeframe suggested a lack of prejudice to Fields but not reinstating the case would result in prejudice to Safway's reputation).)

[31] Safway filed its motion to set aside default judgment one month after the court granted the default judgment. Fields argues that while "mired in discovery involving Safway's effort to set aside the default judgment, witnesses' recollections and physical evidence grew older, and [Fields'] ability to uncover the facts necessary to prove his allegations against Safway grew more remote." (Br. of Appellant at 23.) Fields' argument that he was "mired in discovery[,]" (*id.*), such that he is now prejudiced is without merit.

[32] On June 9, 2017, *Fields* filed the "Motion to Conduct Discovery Pursuant to Indiana Trail [sic] Rule 60(D)." (App. Vol. II at 53.) The trial court granted Fields' motion. Fields' discovery should have included investigation into Safway's meritorious defense that would necessarily involve an investigation of the underlying claims. Any error created by the time taken for discovery was invited by Fields. *See Beeching v. Levee*, 764 N.E.2d 669, 674 (Ind. Ct. App. 2002) ("party cannot invite error and then request relief on appeal based upon that ground").

### *Safway's Prompt Action and Absence of Bad Faith*

[33] Fields argues the trial court improperly considered Safway's prompt action and lack of bad faith. While acknowledging "it is not clear what weight the trial court afforded these equitable considerations[,]" (Appellant's Br. at 24), Fields argues they should have been given no weight because both considerations fall under Trial Rule 60(B)(1) and not Trial Rule 60(B)(8).

[34] The trial court accepted Safway's alleged facts regarding Safway's actions after receiving the complaint. Therefore, we know that within five days of receipt of the complaint, Safway had reviewed it and sent it to the general contractor for insurance coverage and the general contractor had sent it on to Sedgwick to handle. While the trial court concluded Safway's actions constituted neglect that was inexcusable, it also found those actions were "plausible and understandable [and t]here was no intentional ignoring of the lawsuit[.]" (Appealed Order at 4.) Based on that finding, the trial court concluded Safway had not acted in bad faith.

[35] Fields argues Safway did not respond with appropriate promptness. Fields contends "promptness is determined by reasonableness, and is closely tied with the size and sophistication of the moving party." (Appellant's Br. at 24.) However, the Court's analysis in *Huntington* regarding promptness is located in the analysis pertaining to Trial Rule 60(B)(1). That analysis provides that to justify an untimely response, the movant can show a breakdown of communication between agents of the party, *i.e.*, the insurer and the insured, but not merely inattentiveness of the party itself. However, once the Court moves to Trial Rule 60(B)(8), it again lists "quick action" as a factor to be weighed when considereding equitable reasons. *Huntington*, 39 N.E.3d at 658. This has nothing to do with a party's neglect that resulted in the default judgment; rather, it has to do with the speed of action once the default judgment was entered.

[36] The trial court found: Fields was injured on February 10, 2017; Fields filed a complaint on March 28, 2017; Fields filed a Motion for Default Judgment on April 25, 2017; the trial court granted Fields' motion the following day; and Safway filed a Motion to Set Aside Default Judgment on May 26, 2017. The trial court found Safway had taken "prompt action to address the situation." (Appealed Order at 4.) Fields' invitation to consider one month as not prompt enough is an impermissible request to reweigh the evidence, which we cannot do. *See Prime Mort. USA, Inc.*, 885 N.E.2d at 656 (appellate court may not reweigh evidence when trial court makes findings of fact).

# Conclusion

[37] As we determine the trial court did not abuse its discretion when it granted Safway's Motion for Relief from Judgment under Indiana Trial Rule 60(B)(8), we affirm the trial court's order to vacate the partial default judgment herein.

[38] Affirmed.

Riley, J., concurs.

Mathias, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Clint Fields,

*Appellant-Plaintiff,*

v.

Safway Group Holdings, LLC,

*Appellee-Defendant.*

Court of Appeals Case No.
18A-CT-247

**Mathias, Judge, dissenting.**

I agree with the trial court that Safway did not establish mistake, surprise, or excusable neglect sufficient to justify relief, under Trial Rule 60(B)(1), from the default judgment entered in favor of Fields. I part ways with the trial court, and the majority, however, to the extent that they conclude that Safway was entitled to relief under Rule 60(B)(8).

The majority agrees with the trial court that Safway's actions constituted inexcusable neglect, but that equitable considerations justify relief from judgment. But it has long been held that Rule 60(B) permits relief "in extraordinary circumstances which are not the result of any fault or negligence on the part of the movant." *Kretschmer v. Bank of Am., N.A.*, 15 N.E.3d 595, 600

(Ind. Ct. App. 2014) (citing *Wagler v. West Boggs Sewer Dist.*, 980 N.E.2d 363, 371–72 (Ind. Ct. App. 2012), *trans. denied*), *trans. denied*; *see also Goldsmith v. Jones*, 761 N.E.2d 471, 474 (Ind. Ct. App. 2002) (citing *Whitaker v. St. Joseph's Hosp.*, 415 N.E.2d 737, 744 n.6 (Ind. Ct. App. 1981)). Also, a party seeking relief from the judgment under Rule 60(B)(8) must show that its failure to act was not merely due to an omission involving the mistake, surprise or excusable neglect; instead, some extraordinary circumstances must be demonstrated affirmatively, and these circumstances must be *other than* those circumstances enumerated in the preceding subsections of Rule 60(B). *Indiana Ins. Co. v. Ins. Co. of N. Am.*, 734 N.E.2d 276, 279–80 (Ind. Ct. App. 2000) (quoting *Blichert v. Brososky*, 436 N.E.2d 1165, 1167 (Ind. Ct. App. 1982)), *trans. denied*.

[3] Here, the trial court found that Safway's failure to respond to the complaint was negligent. It further found that Safway's negligence was not excusable for purposes of relief under Rule 60(B)(1). But this does not mean that an inexcusably negligent movant such as Safeway may then gain relief under Rule 60(B)(8). To the contrary, it means that they may not be afforded relief at all. Indeed, if a party's neglect does not constitute excusable neglect under Rule 60(B)(1), it would make no sense to nevertheless afford that party relief under Rule 60(B)(8). Otherwise, a party could do an end run around Rule 60(B)(1), opening up the possibility of a parade of cases bypassing the intent of the rule to permit relief only for *excusable* neglect.

[4] Under circumstances where the moving party was negligent, Rule 60(B)(1) should be the exclusive remedy. If that party's negligence was inexcusable, they

should not be afforded relief under Rule 60(B)(8). Because the majority

concludes otherwise, I respectfully dissent.