FILED

Nov 25 2019, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Richard B. Kaufman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Sean M. Clapp
Ian T. Keeler
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Innovative Therapy Solutions Incorporated, d/b/a Innovative Pharmacy Solutions, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Greenhill Manor Management, LLC, et al., <br><br> *Appellees-Defendants.* | November 25, 2019 <br><br> Court of Appeals Case No. 19A-CC-1717 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable William J. Hughes, Judge <br><br> The Honorable Andrew R. Bloch, Magistrate <br><br> Trial Court Cause No. 29D03-1901-CC-471 |

**Bailey, Judge.**

# Case Summary

Innovative Therapy Solutions, d/b/a Innovative Pharmacy Solutions ("ITS"), appeals the trial court order setting aside the default judgment ITS had obtained against Greenhill Manor Management, LLC ("GMM"), Hanover Nursing Management, LLC ("HNM"), and Wintersong Village Management, LLC ("WVM") (collectively, "Management Defendants") in ITS's collection action. There is one issue on appeal which we restate as whether the trial court erred when it granted the Management Defendants' motion to set aside the default judgment.

We reverse and remand.

# Facts and Procedural History

On January 15, 2019, ITS filed its Complaint against Management Defendants and Chosen Consulting, LLC, d/b/a Chosen Healthcare ("Chosen Consulting"), and Chosen Healthcare. The Complaint alleged that Management Defendants are all Chosen Consulting's and Chosen Healthcare's skilled nursing facilities in Indiana. It further alleged that, in the months of February and March of 2018, ITS provided goods and services totaling $52,400.61 to Management Defendants at their request and authorization, and that the defendants failed to provide compensation for those goods and services. The Complaint contained seven counts against the defendants for "Account Stated" and unjust enrichment related to the alleged unpaid and past-due sums.

ITS attached to the Complaint three exhibits, A through C,[1] which it alleged contained invoices and account statements to the Management Defendants for the cost of goods and services ITS provided in the relevant months. The Complaint requested a money judgment against Chosen Consulting and Chosen Healthcare for the total sum of $52,400.61, plus prejudgment interest at a rate of 8%. It also requested, apparently in the alternative, a money judgment against each of the Management Defendants for their portions of the total sum,[2] plus prejudgment interest.

[4] On January 15, 2019, the Hamilton County clerk signed and sealed five Summonses, one to each of the five defendants. The Summonses were addressed as follows:

1. Greenhill Manor Management, LLC
   c/o Midwest Registered Agent, LLC, registered agent
   11988 Fishers Crossing Drive, Unit 100
   Fishers, Indiana 46038;

2. Hanover Nursing Management, LLC
   c/o Midwest Registered Agent, LLC, registered agent
   11988 Fishers Crossing Drive, Unit 100
   Fishers, Indiana 46038;

---

[1] The Complaint identified the exhibits as the invoices for the goods and services ITS provided in February and March of 2018 to GMM (Exhibit A), HNM (Exhibit B), and WVM (Exhibit C).

[2] The Complaint alleged GMM's portion was $19,446.31; HNM's portion was $20,443.97; and WVM's portion was $12,510.33.

3. Wintersong Village Management, LLC
   c/o Midwest Registered Agent, LLC, registered agent
   11988 Fishers Crossing Drive, Unit 100
   Fishers, Indiana 46038;

4. Chosen Consulting, LLC, d/b/a Chosen Healthcare
   c/o Midwest Registered Agent, LLC, registered agent
   11988 Fishers Crossing Drive, Unit 100
   Fishers, Indiana 46038; and

5. Chosen Healthcare
   c/o Highest Executive Officer
   11988 Fishers Crossing Drive, Unit 100
   Fishers, Indiana 46038.

App. Vol. 3 at 48-52. Each Summons stated that the manner of service of the summons was designated as "Certified Mail, Return Receipt Requested." *Id*.

[5] On January 18, ITS's attorney filed a Certificate of Issuance and Service of Summons certifying that he personally delivered to the United States Postal Service ("USPS") five "service packages" consisting of the Summonses, the Complaint with Exhibits, and the ITS attorney's appearance. *Id*. at 53-62. The Certificate of Issuance also provided the USPS tracking numbers for each of the five service packages and attached as an exhibit five certified mail receipts stamped by USPS (one for each defendant) and five printouts from the USPS tracking information website which stated that all five service packages were delivered and "Left with Individual" by USPS on January 16, 2019. *Id*. at 58-62. The Certificate of Issuance contained a certificate of service stating that, on

January 18, ITS's attorney mailed it to all defendants in care of their registered agent at the same address as that listed on the Summonses.

[6] The defendants had not filed a responsive pleading by February 14. Therefore, on that date, ITS filed an Application for Default Judgment alleging all defendants failed to file responsive pleadings that were due on February 8 but seeking default judgment only as to the Management Defendants. The application contained a certificate of service stating that, on February 14, ITS's attorney mailed it to all defendants in care of their registered agent at the same address as that listed on the Summonses. The application for default judgment attached the following documents:

Group Exhibit A – copies of five certified mail receipts stamped by USPS (one for each defendant);

Group Exhibit B – copies of printouts from the Indiana Secretary of State internet records stating that, for all defendants, the "principal office address" was 11988 Fishers Crossing Dr., Fishers, IN 46038, and that, for all defendants except Chosen Healthcare, the "registered agent" was Midwest Registered Agent, LLC, located at the same address as the principal office address;

Group Exhibit C – copies of five USPS "PS Form 3811" return receipts showing each of the five service packages were delivered to the 11988 Fishers Crossing Drive address and signed for by "Danny Dyckman," and five printouts from the USPS tracking information website which stated that all five service packages were delivered and "Left with Individual" by USPS on January 16, 2019.

App. V. 3 at 63-86.

[7] On March 3, the trial court issued a notice to all parties noting that ITS had failed to file with its Complaint an Affidavit of Debt, as required by Indiana Trial Rule 9.2(A). The notice stated, because filing an Affidavit of Debt is a "prerequisite to the entry of [a] default" judgment, the court would take "no action" on ITS's motion for default judgment "until the affidavit is received and made part of the record." App. V. 2 at 5. On March 5, ITS filed its "Supplement to Application for Default Judgment" to which it attached and incorporated an Affidavit of Debt executed by ITS's President. App. V. 3 at 87. The Affidavit stated that, "based upon the books and records of [ITS]," the sums requested in the Complaint were unpaid and still owing. *Id*. at 95-96. The Supplement to Application for Default Judgment contained a certificate of service stating that, on March 5, ITS's attorney mailed it to all defendants care of their registered agent at the same address as that listed on the Summonses.

[8] On March 6, the trial court entered a default judgment against the Management Defendants and issued that order to all parties of record. The order stated that all of the "Applicable Defendants" (i.e., the Management Defendants) had been "duly served with process"; each of those defendants was in default; the Application had been supplemented with an Affidavit of Debt; and the Application should be granted. *Id*. at 97-98. On March 19, ITS filed motions for proceedings supplemental, with certificates of service, and the court issued orders to appear for proceedings supplemental to each Management Defendant.

[9] On April 30, counsel for all defendants entered his appearance, and the Management Defendants filed a motion to set aside the default judgment pursuant to Trial Rule 60(B). The Rule 60(B) motion alleged that: (1) because ITS failed to attach the Affidavit of Debt to the Complaint it served on defendants, service of process was "inadequate," the trial court lacked personal jurisdiction over defendants, and the default judgment was void pursuant to Rule 60(B)(6), *id*. at 141; and (2) the default judgment should be set aside pursuant to Rule 60(B)(8) because of "equitable considerations," *id*. at 142. Management Defendants attached to the motion the Affidavit of Michael Feder, General Counsel for Chosen Consulting, who stated he first became aware of the default judgment "sometime after March 19, 2019." App. V. 3 at 150-51. On April 30, Chosen Consulting and Chosen Healthcare also filed a Motion to Dismiss the Complaint on grounds of lack of personal jurisdiction, insufficiency of service of process, and failure to state a claim. ITS filed responses to those motions, and the court conducted a hearing on June 14, after which it took the matter under advisement.

[10] On July 23, 2019, the trial court issued its order setting aside the default judgment.[3] ITS now appeals.

---

[3] It appears from the record on appeal that the trial court has not yet ruled on the motion to dismiss. The order granting the motion to set aside default judgment erroneously refers to the motion to dismiss "filed on behalf of Plaintiff" but does not rule on any motion to dismiss. App. V. 2 at 12-13.

# Discussion and Decision

[11] This court has recently addressed the standard of review of a ruling on a motion to set aside a default judgment:

> A decision whether to set aside a default judgment is entitled to deference and is reviewed for abuse of discretion. *Coslett v. Weddle Bros. Const. Co., Inc.*, 798 N.E.2d 859, 861 (Ind. 2003), *reh'g denied*. Any doubt about the propriety of a default judgment should be resolved in favor of the defaulted party. *Id.* Indiana law strongly prefers disposition of cases on their merits. *Id.* Our standard of review is limited to determining whether the trial court abused its discretion. *Bennett v. Andry*, 647 N.E.2d 28, 31 (Ind. Ct. App. 1995). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993).

*Fields v. Safway Group Holdings, LLC*, 118 N.E.3d 804, 809 (Ind. Ct. App. 2019), *trans. denied*. "Upon a motion for relief from a default judgment, the burden is on the movant to show sufficient grounds for relief under Indiana Trial Rule 60(B)." *Dalton Corp. v. Myers*, 65 N.E.3d 1142, 1144 (Ind. Ct. App. 2016) (quoting *Huntington Nat. Bank v. Car–X Assoc. Corp.*, 39 N.E.3d 652, 655 (Ind.2015)), *trans. denied*.

# Trial Rule 60(B)(6)

[12] ITS contends that the trial court erred to the extent it set aside the default judgment on the grounds that the judgment was void for lack of personal

jurisdiction.[4]  Indiana Trial Rule 60(B) governs a request for relief from a default judgment.  Subsection (6) of that Rule provides that the trial court may grant such relief when the judgment is void.  Management Defendants contended in the trial court and contend on appeal that the default judgment is void because ITS failed to attach an Affidavit of Debt to its Complaint pursuant to Indiana Trial Rule 9.2(A), which states in relevant part:  "When any pleading allowed by these rules is founded on an account, an Affidavit of Debt, in a form substantially similar to that which is provided in Appendix A-2 to these rules, shall be attached."  Management Defendants contend that ITS's failure to attach the Affidavit of Debt to the Complaint rendered the latter deficient, which in turn rendered service of process inadequate.  Therefore, citing *King v. United Leasing, Inc.*, 765 N.E.2d 1287 (Ind. Ct. App. 2002),[5] they contend that the inadequate service left the trial court without personal jurisdiction over them, and the default judgment was void and should be vacated.

[13]  However, "it is well established that non-compliance with Rule 9.2(A) is not a per se bar to the action."  *Brown v. Guinn*, 970 N.E.2d 192, 195 (Ind. Ct. App. 2012).  Rather, Trial Rule 9.2(F)—which Management Defendants only selectively quote—plainly states that a trial court faced with non-compliance

---

[4]  The trial court did not issue findings of fact and conclusions of law.

[5]  *King* involved unclaimed service of process, not an alleged failure to comply with Trial Rule 9.2(A).  765 N.E.2d at 1290.

with 9.2(A), "in its sound discretion, may order compliance, the reasons for non-compliance to be added to the pleadings, *or allow the action to continue without further pleading*." (emphasis added). *See also Bank of New York v. Bright*, 494 N.E.2d 970, 975 (Ind. Ct. App. 1986) ("By its very terms, Trial Rule 9.2(F) affords the trial court discretion in addressing non-compliance with Trial Rule 9.2(A). The court may, in its sound discretion, either order compliance or permit the action to proceed without amendment of the pleadings.").

[14] Here, the trial court issued a notice to the parties in which it clearly decided to allow ITS to submit an Affidavit of Debt without amending the Complaint. *See* App. V. 2 at 5 ("Notice Issued to Parties," stating an Affidavit of Debt was required and, "as a result, no action is taken on the Plaintiffs' motion [for default judgment] *until the affidavit is received and made a part of the record*.") (emphasis added). The court acted within its discretion. T.R. 9.2(F).

[15] Management Defendants also assert that the default judgment is void because the Affidavit of Debt that was eventually filed does not comply with the business records exception to hearsay as provided in Indiana Rule of Evidence 803(6). However, even if that allegation were true, failure to attach an admissible affidavit does not void the judgment for the same reason the failure to attach the affidavit at all does not void the judgment. The trial court has discretion to allow the case to proceed regardless of the form, or even existence,

of the Affidavit of Debt. T.R. 9.2(F).[6] Here, the trial court did not abuse that discretion, and the default judgment is not void. Therefore, Trial Rule 60(B)(6) does not afford Management Defendants relief from that judgment.

# Trial Rule 60(B)(8)

[16] The only other ground Management Defendants alleged for their motion to set aside the default judgment was Trial Rule 60(B)(8), which provides that a court may relieve a party from a judgment for "any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4)." Such a motion "shall be filed within a reasonable time" and "must allege a meritorious claim or defense." *Id.* If a movant demonstrates a timely filing of its motion to set aside judgment and a meritorious defense, a trial court may grant relief from the judgment under 60(B)(8) upon an additional showing of "exceptional circumstances" justifying such relief. *Fields*, 118 N.E.3d at 809-10 (citing *Brimhall v. Brewster*, 864 N.E.2d 1148, 1153 (Ind. Ct. App. 2007), *trans. denied*); *see also State v. Collier*, 61 N.E.3d 265, 268-69 (Ind. 2016). Exceptional circumstances include "equitable considerations" such as (1) whether the movant has a substantial interest in the matter at issue; (2) whether the movant had an "excusable reason" for its

---

[6] We also note that Indiana is a "notice pleading" state in which a complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues and what evidence will be presented at trial. *ARC Const. Management, LLC v. Zelenak*, 962 N.E.2d 692, 697 (Ind. Ct. App. 2012). Management Defendants do not contend that the pleadings failed to provide them with notice of the claims against them and the evidence to be presented at trial.

untimely response; (3) whether the movant took "quick action to set aside the default judgment" once the complaint was discovered; (4) whether the movant will suffer significant loss if the default judgment is not set aside; and (5) whether the non-movant will suffer only minimal prejudice if the case is reinstated. *Huntington*, 39 N.E.3d at 658; *see also Dalton*, 65 N.E.3d at 1145.

*Timing of Motion to Set Aside Judgment*

[17]     Determining what is a reasonable time period to file a motion pursuant to Rule 60(B)(8) "depends on the circumstances of each case, as well as the potential prejudice to the party opposing the motion and the basis for the moving party's delay." *Collier*, 61 N.E.3d at 268. Here, Management Defendants filed their 60(B) motion on April 30, 2019, over three months after the Complaint and Summonses were filed and served and over seven weeks after the default judgment was entered.

[18]     Management Defendants do not dispute that the Complaint and Summonses were served by certified mail to the address of their registered agent as listed with the Secretary of State. That is unquestionably effective service of process, and Management Defendants do not claim otherwise. *See Precision Erecting, Inc. v. Wokurka*, 638 N.E.2d 472, 474 (Ind. Ct. App. 1994) (holding Trial Rule 4.6 requires only that service be sent by certified mail to an organization's registered agent, *not* that the registered agent be the person who signs the return receipts*), trans. denied*. Moreover, Management Defendants admit that the person who signed for the documents, Danny Dyckman, was an employee of

their parent company, Chosen Healthcare, whose offices were located at the same address as that for Management Defendants and their registered agent. They note that Mr. Dyckman was not their employee or an employee of their registered agent, and that he was "not overly familiar with legal service of process." Appellee's Br. at 22. But, notably, Management Defendants never allege that Mr. Dyckman actually failed to timely give them the complaint and summonses.

[19] In fact, Management Defendants provide no explanation at all of what happened to the pleading documents after Mr. Dyckman signed for them, other than to state, vaguely, that the complaint "slipped through the cracks." *Id*. Their general counsel submitted an affidavit stating that he was not aware of the default judgment until sometime after March 19, 2019, but Management Defendants never allege that either they or their counsel were unaware of the *lawsuit* until that date. *See* App. V. 3 at 144 (alleging that "[t]he Default Defendants only recently discovered the *entry of the Default Judgment*") (emphasis added); *Smith v. State*, 38 N.E.3d 218, 222 (Ind. Ct. App. 2015) (holding movant did not show timely 60(B)(8) motion where he did not even "specifically state when" he first learned of the case). Nor do Management Defendants ever allege that they did not receive the other court filings ITS's counsel verified in Certificates of Service that he served on them or the orders and notices that the trial court issued to all parties prior to the order granting default judgment.

In short, Management Defendants failed to allege facts that would indicate a reasonable basis for why they waited for over seven weeks from the date of the default judgment to file a motion to set aside that judgment. Under the circumstances of this case, the defaulted parties failed to demonstrate that they filed their motion "within a reasonable time." T.R. 60(B).

*Meritorious Defense*

Because Management Defendants failed to demonstrate that they filed their motion to set aside default judgment in a timely manner, we need not address whether they alleged facts that would establish a meritorious defense or exceptional circumstances. *See* T.R. 60(B) (emphasis added) ("The motion *shall* be filed within a reasonable time…."); *Fields*, 118 N.E.3d at 810 (citing *Huntington*, 39 N.E.3d at 659)) (holding "*provided* the movant demonstrated a meritorious defense and filed the motion for relief in a timely fashion," the court may proceed to a determination of whether defendants demonstrated exceptional circumstances justifying relief from the default judgment (emphasis added)).

However, assuming for argument's sake that Management Defendants had timely filed their motion, we consider whether they demonstrated that they had a meritorious defense to the lawsuit. "A meritorious defense is defined as enough admissible evidence to indicate that if the case were retried on the merits, a different result would be reached and that an injustice would be foisted

upon the defaulted party if the judgment were allowed to stand." *Gallant Ins. Co. v. Toliver*, 695 N.E.2d 592, 593-94 (Ind. Ct. App. 1998), *trans. denied*.

[23] Here, for their contention that they have a meritorious defense "on at least a portion" of the claims, Management Defendants rely solely upon the face of the exhibits ITS attached to its complaint; i.e., the invoices and statements of account to Management Defendants for the months of February and March of 2018. Appellee's Br. at 19. Specifically, they note that some of the documents are stamped with the words "Non-Covered Items" and/or "Medicaid Pending," and that those words indicate they may not be liable for all or a portion of the charges so stamped. *Id*. We agree that portions of the exhibits attached to the complaint contain some notations that are confusing and/or conflicting. For example, some statements stamped "non-covered services" appear to charge for all of the items listed in the statement, but other statements stamped "non-covered services" appear to only charge for items that are circled. *See, e.g.*, Complaint Ex. A, App. V. 2 at 79-81. Thus, it is not clear what "non-covered services" means or to which items it applies. Therefore, Management Defendants have pointed to evidence indicating they may have a meritorious defense to at least some of the charges at issue.

*Exceptional Circumstances*

[24] However, even if we assume for the sake of argument that Management Defendants demonstrated a timely filing of their motion to set aside and a meritorious defense, they may not be granted relief under Trial Rule 60(B)(8)

unless they also demonstrate that their failure to act was justified by some exceptional circumstances.[7] *See, e.g.*, *Dalton*, 65 N.E.3d at 1145. They have failed to do so. As previously discussed, Management Defendants have provided no reason at all for their failure to file any document in this case until over three months after the complaint was admittedly delivered to the address of their registered agent by certified mail. *See J.K. Harris & Co., LLC v. Sandlin*, 942 N.E.2d 875, 883-84 (Ind. Ct. App. 2011) (holding defendant's unexplained failure to act after process was admittedly served at its registered agent and/or corporate address did not satisfy the Rule 60(B)(8) requirement that it show exceptional circumstances warranting relief from default judgment), *trans. denied*. Management Defendants do not contend that they did not receive notice of the lawsuit when it was served; rather, they allege only that the complaint "slipped through the cracks." Appellee's Br. at 22. However, that is a circumstance entirely of their own making, not an "exceptional circumstance" warranting relief from judgment. *See Dalton*, 65 N.E.3d at 1146 (where circumstances leading to default judgment were due entirely to a breakdown in communication between the defendant and its parent company, defendant failed to show exceptional circumstances warranting relief under Rule 60(B)(8)); *see also Precision Erecting*, 638 N.E.2d at 474 (noting "risk of a

---

[7] The exceptional circumstances shown under Rule 60(B)(8) may *not* include mistake, surprise, or excusable neglect; rather, the latter circumstances are considered only when relief from judgment is sought pursuant to Trial Rule 60(B)(1). *See, e.g.*, *Fields*, 118 N.E.3d at 809-10. Management Defendants specifically state that they did not seek relief under Rule 60(B)(1). Appellee's Br. at 8-9, 23 n.5.

breakdown in communication between [defendant] and [its registered agent] is one that should be born by [the defendant]").

[25] Management Defendants failed to allege facts showing the default judgment was void or any other reason justifying relief from judgment. Therefore, the trial court order setting aside the default judgment was clearly against the logic and effect of the facts and circumstances before the court.

# Conclusion

[26] A default judgment is an "extreme remedy," and we prefer to decide cases on the merits where possible. *Huntington*, 39 N.E.3d at 659. However where, as here, there is no explanation at all for an untimely response, "[t]he judicial system simply cannot allow its processes to be stymied by simple inattention." *Id.* at 658. The trial court erred in setting aside the default judgment.

[27] We reverse and remand for proceedings consistent with this opinion.

Najam, J., and May, J., concur.